[Nos. 61780-5; 62229-9. En Banc. June 15, 1995.]

THE ESTATE OF CARY R. KELLY, ET AL., Respondents, v. JAMES ROBERT FALIN, ET AL., Appellants.

RICHARD WOLFRAM, Appellant, v. LAHAINA LOUIE'S PUB & CAFE, Respondent.

*Meeks, Morgan & Kirkpatrick, P.S.,* by *Steven R. Meeks,* for appellant *Falin.*

*Thomas S. Olmstead* and *Kevin L. Gibbs*, for appellant Wolfram.

*Edwards, Sieh, Wiggins & Hathaway, P.S.*, by *Carl T. Edwards*, for respondent Kelly.

*Burgess, Fitzer, Leighton & Phillips, P.S.*, by *F. Ross Burgess*, for respondent Lahaina Louie's Pub.

*James Schermer* and *Michael P. Scruggs* on behalf of Restaurant Association of the State of Washington and Washington State Licensed Beverage Association, amici curiae.

DURHAM, C.J. — Cary Kelly died in a one-car accident after leaving Family Tavern. His estate brought a wrongful death action against Family Tavern and its owner, James Falin, alleging the tavern continued to serve Cary Kelly even after he was obviously intoxicated. At the close of trial, the jury returned a special verdict finding Kelly 50 percent responsible for his injuries and Family Tavern 50 percent responsible. The court entered a judgment in favor of Kelly's estate for $360,500. Family Tavern appealed to the Court of Appeals, and we granted Plaintiff's motion to transfer the appeal to this court. In an unrelated incident, Richard Wolfram lost control of his car and suffered injuries to his spinal cord on his way home from Lahaina Louie's Pub & Cafe. Wolfram sued Lahaina Louie's for serving him while he was obviously intoxicated. Lahaina Louie's moved for summary judgment, and the Superior Court for King County granted its motion. Wolfram appealed and we granted Lahaina Louie's motion to transfer the appeal to this court.

These cases were consolidated to allow us to address whether a commercial establishment that serves alcohol to an obviously intoxicated patron is liable if the patron suffers harm as a result. In other words, does a commercial establishment owe a duty of care to obviously intoxicated patrons? Currently, commercial purveyors of alcohol owe a duty both to innocent bystanders injured by obviously intoxicated patrons and to minors. These limited catego-

ries of commercial liability exclude adults who suffer injuries arising from their own intoxication. We hold that a commercial establishment is not liable for injuries sustained by an obviously intoxicated patron.

## Cary Kelly

Cary Kelly left Family Tavern unaccompanied on November 4, 1990, after consuming a considerable quantity of alcohol. He drove nine blocks at high speed, careened across a four-lane highway, and slammed into a tree with such force that the car's engine pushed through the firewall and into the passenger compartment. The impact severed Kelly's aorta, and he died instantly. No one else was injured.

Kelly had spent most of the afternoon drinking beer with his friends Michael Wemmer and Rocky Fuller. They had gathered at West End Tavern at approximately 2 p.m. to watch a football game on the big screen television. After the game ended, they proceeded to the Family Tavern. They arrived apparently around 4:15 p.m., took a table together, played darts and pool, and drank heavily over the next several hours.

The bartender on duty when they first arrived furnished the men with four or five pitchers of beer before finishing her shift at around 6 p.m. Wemmer testified that Kelly became clearly intoxicated during the bartender's shift. His behavior was boisterous and unruly; he was spilling beer, disturbing patrons, and was unable to follow simple instructions. Although the bartender became exasperated with Kelly after he mistakenly used the pool rag to wipe up spilled beer, she continued to serve him.

It appears that Kelly left the tavern for a short time, and then returned, just before the bartender finished her shift. For the next two hours, Kelly steadily drank as he and his friends finished another four or five pitchers of beer. Kelly grew increasingly intoxicated, slurring his speech and growing unintelligible, knocking over glasses and spilling his beer, arguing loudly with his friends and

with others, and again using the pool rag to wipe up his spilled beer. Nevertheless, the bartender continued to serve him.

Fuller left the tavern at approximately 7:30 p.m., after fighting with Kelly over who was the better father. Wemmer departed about a half hour later, expecting Kelly to leave shortly thereafter since he knew Kelly did not have money to purchase beer. Kelly headed home just before 8:20 p.m. and quickly lost control of his car. At the time of the crash, Kelly's blood alcohol content was .31, three times the legal limit. To have reached that level of intoxication, the state toxicologist calculated that Kelly must have consumed between 200 and 240 ounces of beer between 2 p.m. and 8 p.m.

### Richard Wolfram

On the evening of January 27, 1992, Richard Wolfram purchased two alcoholic beverages upon completing his shift at a bar where he was employed. After consuming these, Wolfram left the bar around 11:15 p.m. and, with several of his co-workers, headed to Lahaina Louie's Pub & Cafe. One of his co-workers, who served drinks at the bar where Wolfram was employed, stated that Wolfram consumed five beers and four or five shots of Jagermeister during an hour-and-a-half at Lahaina Louie's. She described Wolfram as obviously intoxicated, based on his slurred speech, his shoving match with another patron, and his references to inappropriate personal issues.

At 1:45 a.m., the bartender at Lahaina Louie's gave the last call for drinks. According to another co-worker, Wolfram appeared drunk as he ordered one final beer. When the bar closed, Wolfram tried to sneak the beer out under his coat. The security guard caught him, however, and watched as Wolfram drank the beer before leaving.

As Wolfram drove home, his car veered off the pavement and his right front wheel hit gravel on the road's soft shoulder. At this point, Wolfram lost control of the car. It spun into an embankment and rolled over, injuring

Wolfram's spinal cord. At the time of the accident, Wolfram's blood alcohol content was .22. The spinal cord injury left Wolfram a quadriplegic.

ANALYSIS

 Richard Wolfram and the Estate of Cary Kelly argue that Lahaina Louie's and Family Tavern, respectively, negligently served alcohol to obviously intoxicated patrons, and this negligence resulted in the tragic accidents discussed above. The threshold question in an action for negligence is whether a duty of care exists on the part of the defendant to the complaining party. *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989). In the present case, Richard Wolfram and the Estate of Cary Kelly[1] insist that commercial vendors have a legal duty to refuse alcohol to obviously intoxicated patrons, and are liable to patrons who injure themselves as a result of their own drunkenness.

In Washington, the Legislature historically has maintained an active role in allocating responsibility for alcohol abuse and drunk driving. In 1905, the Legislature enacted the "Dramshop Act" which exposed purveyors of intoxicating liquor to liability if the "circumstances [were] sufficient to lead a man of ordinary intelligence to believe that such sale would probably result in intoxication". Former RCW 4.24.100. In 1955, the Legislature repealed the "Dramshop Act". In response, this court adopted the common-law rule that "[i]t is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men". *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 762, 458 P.2d 897 (1969) (quoting 30 Am. Jur. *Intoxicating Liquors* § 520 (1958)).

While the common-law rule indicates that commercial vendors will not be held liable for overserving patrons, there are two exceptions. First, commercial vendors have

---

[1]Richard Wolfram and the Estate of Cary Kelly hereafter will be referred to collectively as the Patrons.

a duty to avoid providing minors with alcohol, and as a result, may be sued for injuries resulting from a minor's intoxication. *Purchase v. Meyer*, 108 Wn.2d 220, 737 P.2d 661 (1987); *Young v. Caravan Corp.*, 99 Wn.2d 655, 658, 663 P.2d 834, *modified*, 672 P.2d 1267 (1983).

Second, an injured bystander may bring a negligence action against a commercial vendor for serving an obviously intoxicated adult. *Dickinson v. Edwards*, 105 Wn.2d 457, 716 P.2d 814 (1986); *Christen v. Lee*, 113 Wn.2d 479, 505, 780 P.2d 1307 (1989). Such third-party actions generally arise in the context of drunk driving accidents. *Christen*, at 495. A tavern or other commercial vendor may be held liable if it serves alcohol to an obviously intoxicated patron who injures or kills a bystander in a drunk driving accident. *Dickinson v. Edwards, supra.*

██ It is an open question whether an individual who loses control of a vehicle after becoming intoxicated at a commercial establishment may seek monetary recovery for his or her own injuries. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642-43, 618 P.2d 96 (1980); *Williams v. Kingston Inn, Inc.*, 58 Wn. App. 348, 356 n.3, 792 P.2d 1282 (1990). The Patrons would have us believe that permitting a cause of action under these circumstances is the logical extension of the exceptions to the common-law rule. We disagree. The common-law rule rejects the notion that intoxicated adults can hold commercial vendors liable for furnishing them alcohol. Imposing a negligence standard against commercial vendors for an intoxicated patron's self-inflicted injuries would be the final step in dismantling the common-law rule.

Moreover, this court has "repeatedly refused" to impose broader exceptions to the common-law rule. *Christen*, 113 Wn.2d at 494. For example, in *Shelby v. Keck*, 85 Wn.2d 911, 914-17, 541 P.2d 365 (1975), we held that a commercial vendor must have notice of a patron's obvious intoxication for an injured bystander to allege negligence, and rejected a strict liability standard that measured obvious intoxication solely in terms of blood alcohol content. As we

explained in *Shelby*, a strict liability standard "against one who furnishes liquor whenever a patron commits a tort while intoxicated" would be the equivalent of a judicially imposed "Dramshop Act". *Shelby*, at 915.

Similarly, a requirement that commercial establishments pay for the self-inflicted injuries of an intoxicated patron abrogates the Legislature's repeal of the "Dramshop Act", and therefore is insupportable. Under the "Dramshop Act", an intoxicated adult could hold a commercial vendor accountable for self-inflicted injuries, but by repealing the "Dramshop Act", the Legislature rejected imposing liability. We repeatedly have recognized that the "Legislature is the appropriate body to address any such changes in [this area of] the law". *Christen*, 113 Wn.2d at 494 (citing *Burkhart v. Harrod*, 110 Wn.2d 381, 383, 755 P.2d 759 (1988)). We refuse to contravene the Legislature's explicit rejection of the "Dramshop Act". To do so would usurp the Legislature's authority to weigh who should be held accountable for alcohol-related accidents.

■ The Patrons argue that even if the court rejects liability under the common-law rule, RCW 66.44.200 establishes a duty of care on commercial vendors. As part of the state Alcoholic Beverages Control Act, RCW 66.44.200 provides that "[n]o person shall sell any liquor to any person apparently under the influence of liquor" and imposes criminal penalties for noncompliance under RCW 66.44.180. Violation of a criminal statute is evidence of negligence only if the statute was intended to protect both the person bringing the action and the "particular interest" asserted.[2] Restatement (Second) of Torts § 286 (1965); *Christen*, 113 Wn.2d at 502. As a result, for RCW

---

[2]In 1986, the Legislature adopted RCW 5.40.050, which prohibits a finding of negligence per se based on the violation of a criminal statute. In light of RCW 5.40.050, this court has followed the rule of Restatement (Second) of Torts § 286 (1965), which provides, in part:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

66.44.200 to provide evidence of negligence, it must protect the drinker, and more specifically, the drunk driver.

This court previously has relied on the state Alcoholic Beverages Control Act to establish negligence in a tort action. In *Hansen v. Friend*, 118 Wn.2d 476, 824 P.2d 483 (1992), we held that parents whose minor child drowned after becoming intoxicated could use RCW 66.44.270 as evidence that he negligently was served alcohol. The *Hansen* court found that RCW 66.44.270, which imposes criminal penalties for providing minors with alcohol under RCW 66.44.180, "protects a minor's health and safety interest from the minor's own inability to drink responsibly". *Hansen*, at 481. Since RCW 66.44.270 was *intended to protect minors from the dangers of alcohol,* it saddles the provider of alcohol with a duty of care toward minors.

■■ It belies common sense, however, to suggest that RCW 66.44.200, which proscribes selling alcohol to intoxicated adults, was intended to shield the drunk driver from responsibility for his or her own actions. Indeed, RCW 66.44.200 was enacted to "[protect] the welfare, health, peace, morals, and safety of the people of the state". RCW 66.08.010. The Patrons offer no evidence that the Legislature intended RCW 66.44.200 to protect the drunk driver. Statutes should be construed to effect their purpose, and avoid unlikely "absurd or strained consequences". *Wright v. Engum*, 124 Wn.2d 343, 351, 878 P.2d 1198 (1994) (quoting *In re Eaton*, 110 Wn.2d 892, 901, 757 P.2d 961 (1988)). Without a more precise directive from the Legislature, it would be utterly fatuous to interpret RCW 66.44.200 as protecting the drunk driver. Adults are expected to temper their alcohol consumption or simply refrain from driving when intoxicated. Unlike an innocent

---

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded . . . .

RESTATEMENT (SECOND) OF TORTS § 286 (1965), quoted in *Hansen v. Friend*, 118 Wn.2d 476, 480-81, 824 P.2d 483 (1992). *Accord Christen v. Lee*, 113 Wn.2d 479, 502, 780 P.2d 1307 (1989).

bystander hit by a drunk driver or a youth whose sense of immortality leads to reckless abandon, the responsibility for self-inflicted injuries lies with the intoxicated adult. Until the Legislature indicates otherwise, this court will not absolve intoxicated adults of their accountability for such accidents.

The Patrons also argue that a tort action is warranted under RCW 5.40.060, which provides, in part:

> [I]t is a complete *defense* to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

(Italics ours.) RCW 5.40.060(1). As Lahaina Louie's notes, however, the plain language of the statute *limits* the rights of intoxicated plaintiffs. Br. of Resp't (Lahaina Louie's), at 12. Rather than creating a cause of action for intoxicated plaintiffs, RCW 5.40.060 provides an additional defense for defendants sued by intoxicated plaintiffs.

As already discussed, today's decision recognizes that while commercial vendors have a duty to minors and innocent bystanders, no duty arises when intoxicated adults harm themselves. The distinction between intoxicated adults and intoxicated minors is simple. The Legislature has determined that, unlike adults, "persons under 21 years of age are neither physically nor mentally equipped to handle the consumption of intoxicating liquor". *Young v. Caravan Corp.*, 99 Wn.2d 655, 660, 663 P.2d 834, *modified*, 672 P.2d 1267 (1983). The Legislature rejected this axiom for adults when it repealed the "Dramshop Act".

The Patrons argue that a distinction between an innocent bystander's injuries and an intoxicated adult's self-inflicted injuries is without merit. The Patrons contend that the duty of a commercial tavern should not turn on the identity of the victim under this court's decision in

*Wilson v. Steinbach*, 98 Wn.2d 434, 439, 656 P.2d 1030 (1982). Br. of Resp't (Kelly), at 29. In *Wilson*, we rejected arguments that a social host serving alcohol had a greater duty to intoxicated house guests than to injured bystanders and concluded the identity of the injured party should have no bearing on a social host's duty of care. *Wilson*, at 439-40. Nevertheless, the applicability of *Wilson* to the context of commercial vendors is dubious. As a matter of public policy, we have premised the duty of commercial vendors on the need to protect *innocent bystanders* from intoxicated patrons, *Christen v. Lee*, 113 Wn.2d 479, 497, 780 P.2d 1307 (1989) (citing *Shelby v. Keck*, 85 Wn.2d 911, 914, 541 P.2d 365 (1975); *Waldron v. Hammond*, 71 Wn.2d 361, 363, 428 P.2d 589 (1967)), and on the need to protect *minors. Purchase v. Meyer*, 108 Wn.2d 220, 737 P.2d 661 (1987); *Young v. Caravan Corp.*, 99 Wn.2d 655, 663 P.2d 834, *modified*, 672 P.2d 1267 (1983). These public policy concerns are not present when intoxicated adults injure themselves.[3]

A rule that allows an intoxicated adult to hold a commercial vendor liable fosters irresponsibility and rewards drunk driving. Rather than deterring drunk driving, excessive drinking, and the callow and imprudent behavior of intoxicated adults, such a rule would actually compensate patrons who drink beyond obvious intoxication. As the Ohio Supreme Court explained in rejecting recovery by an intoxicated patron even though Ohio allows third party recovery:

> [A]n adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior and resulting voluntary actions. Clearly, permitting the intoxicated patron a cause of action in this context would simply send the wrong message to all our citizens, because such a message would essentially state that a patron who has

[3]As the Oklahoma Supreme Court stated when addressing the distinction between allowing an intoxicated passenger to recover from a commercial establishment but barring recovery for the drunk driver: "The difference is obvious and dispositive. One individual got behind the steering wheel of an automobile and drove it in a drunken condition; the other one didn't." *Ohio Casualty Ins. Co. v. Todd*, 813 P.2d 508, 512 (Okla. 1991).

purchased alcoholic beverages from a permit holder may drink such alcohol with unbridled, unfettered impunity and with full knowledge that the permit holder will be ultimately responsible for any harm caused by the patron's intoxication. In our opinion, such a message should never be countenanced by this court.

*Smith v. The 10th Inning, Inc.*, 49 Ohio St. 3d 289, 291-92, 551 N.Ed.2d 1296 (1990). Given a choice between a rule that fosters individual responsibility and one that forsakes personal accountability, we opt for personal agency over dependency and embrace individual autonomy over paternalism.

[A]s a matter of public policy drunken persons who harm themselves are responsible for their condition, and should not prevail either under a common law or statutory basis.

(Citations omitted.) *Ohio Casualty Ins. Co. v. Todd*, 813 P.2d 508, 511 (Okla. 1991) (recognizing that a majority of jurisdictions have rejected finding commercial vendors have a duty to intoxicated patrons under common law).

We hold that a commercial vendor owes no duty of care to patrons who suffer injuries as a result of their intoxication. Accordingly, the judgment of the trial court in *Estate of Kelly v. Falin*[4] is reversed; the trial court's entry of summary judgment in *Wolfram v. Lahaina Louie's Pub & Cafe* is affirmed.

DOLLIVER, SMITH, and MADSEN, JJ., and ANDERSEN, J. Pro Tem., concur.

---

[4]Given the outcome of today's decision, it is unnecessary to decide if the trial court in *Estate of Kelly* erred in admitting Cary Kelly's blood alcohol content as evidence of obvious intoxication and improperly excluded evidence of his appearance when inebriated on other occasions. We reject the Estate of Kelly's assertion that the Family Tavern was precluded from raising the issue of a commercial vendor's duty on appeal, noting: (1) Family Tavern asserted in its answer to the complaint that the Estate of Kelly failed to raise a legally sufficient claim; (2) in posttrial motions Family Tavern argued it had no legal duty to Mr. Kelly, and the trial court denied the motions on the merits; and (3) as a result of the confusion in this area of the law, the jury instructions did not define to whom commercial vendors owe a duty, making Family Tavern's failure to object irrelevant. See *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 256-57, 840 P.2d 860 (1992).

GUY, J. (dissenting) — This case is about fault, not duty. The majority interprets a commercial vendor's duty in this case to vary by the identity of victim: innocent third parties and minors can sue for a bartender's negligent overservice of alcohol, but an injured first party cannot. Underlying the majority's opinion is the tacit premise that an injured patron is wholly at fault and does not deserve to recover damages. Because a jury, not this court, should decide the comparative fault of the bartender and injured patron, I respectfully dissent. The majority stakes its opinion on a battle already lost; namely, that the common law does not permit suits against commercial vendors of alcohol. Citing *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 458 P.2d 897 (1969), the majority concludes it is not a tort to serve alcohol to an able-bodied person. The majority then concedes two exceptions to the common-law rule: liability for serving alcohol to minors and liability to innocent third parties "for serving an obviously intoxicated adult". Majority, at 37.

What the majority omits are the actual exceptions this court has established.

> In Halvorson, we recognized and adopted the general common law rule of nonliability for furnishing intoxicants to an able-bodied person, while simultaneously recognizing the exceptions to the rule for obviously intoxicated persons, persons in a state of helplessness, or persons in a special relationship to the furnisher of intoxicants.

*Wilson v. Steinbach*, 98 Wn.2d 434, 438, 656 P.2d 1030 (1982); *accord Burkhart v. Harrod*, 110 Wn.2d 381, 383, 755 P.2d 759 (1988); *Purchase v. Meyer*, 108 Wn.2d 220, 225, 737 P.2d 661 (1987); *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986); *Young v. Caravan Corp.*, 99 Wn.2d 655, 658, 663 P.2d 834, *modified*, 672 P.2d 1267 (1983); *Shelby v. Keck*, 85 Wn.2d 911, 916, 541 P.2d 365 (1975).

Knowledge of a patron's obvious intoxication obligates the bartender to cut the patron off. "Under the common law of this state, a commercial purveyor of alcoholic bever-

ages owes a duty not to furnish intoxicating liquor to a person who is obviously intoxicated". *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989); *Purchase*, 108 Wn.2d at 225 ("commercial purveyor of alcoholic beverages may be held liable for damages caused by furnishing intoxicating beverages to an 'obviously intoxicated' person"). Under this duty, minors and injured third parties may sue the negligent bartender for damages. *See Young*, 99 Wn.2d at 658 (minors); *Purchase*, 108 Wn.2d at 228 (third parties injured by intoxicated minors); *Dickinson*, 105 Wn.2d at 461 (third parties injured by intoxicated adults).

The obvious intoxication exception recognizes that an intoxicated person cannot adequately judge his or her condition and, therefore, is in no shape to decide whether to have another drink. In the language of the common law, an obviously intoxicated person is no longer able-bodied, but rather in a state of helplessness. *Shelby*, 85 Wn.2d at 916.

The majority now *limits* the scope of this duty to exclude suits by patrons. "[T]oday's decision recognizes that while commercial vendors have a duty to minors and innocent bystanders, no duty arises when intoxicated adults harm themselves." Majority, at 40. The majority gives three reasons for not recognizing the bartender's duty to the patron. None of these reasons justifies treating injured patrons differently than injured third parties.

First, the majority fears that imposing liability for an intoxicated patron's injury would be the "final step" in dismantling the common-law rule. Majority, at 37. This assumes that the common law denied liability in all cases. It did not. The final step involved in this case is to acknowledge that a bartender's duty not to serve the obviously intoxicated protects customers as well as minors and third parties. The duty in each case is the same; the only question is who can sue.

Second, the majority notes at page 37 that this court has refused to impose broader exceptions to the common-law rule, citing *Christen*, 113 Wn.2d at 494. In *Christen*, the

court declined to hold a bartender liable for the unforeseen violent acts of a patron "some distance" from the bar. *Christen*, 113 Wn.2d at 492. The majority fails to note the court's conclusion in *Christen*.

> [T]he history of the duty owed by a furnisher of intoxicating liquor in this state evinces a well considered and reasoned reluctance on the part of this court, in light of the Legislature's repeal of this state's dramshop act, to now judicially decree common law liability in cases *other than those fitting within the well-recognized exceptions to the common law rule.*

(Italics mine.) *Christen*, 113 Wn.2d at 495. Liability for service to an obviously intoxicated patron clearly fits within the exceptions to the common-law rule.

Third, the majority declares that acknowledging a duty in this case "would usurp the Legislature's authority to weigh who should be held accountable for alcohol-related accidents". Majority, at 38. This argument applies with equal force to third-party claims. When it repealed the dramshop act in 1955, the Legislature not only eliminated claims by the intoxicated patron, it also abolished claims by any "person who shall be injured in person or property . . . by any intoxicated person". Laws of 1905, ch. 62, § 1, p. 120. But this court has held under the common law that injured third parties may sue the bartender for negligence. *Christen*, 113 Wn.2d at 495. If the majority means what it says, both *Christen* and *Dickinson* were wrongly decided.

We did not usurp the Legislature's authority by allowing third-party claims. The repeal of the dramshop act reintroduced the common-law rule but did not grant commercial vendors absolute immunity. *Christen*, 113 Wn.2d at 512 (Utter, J., concurring in part, dissenting in part); *Halvorson*, 76 Wn.2d at 762. With the common law comes our obligation to interpret the law in each case. We fulfilled our responsibility in prior cases by defining the common law exception for obvious intoxication. Here, the majority avoids its obligation with a claim of deference to the Legislature. A commercial vendor's *duty* to an

intoxicated customer is the same, regardless of whether an injured third party or an injured customer sues.

The majority missteps when it disjoins a bartender's duty not to overserve. Tort duties must not vary by the identity of the injured party.

> [P]etitioners seek a rule which would require differing duties and render different results depending on the identity of the victim. We find this argument wholly unpersuasive. Recently, in the context of the family or household exclusion clause in automobile insurance policies, we rejected just such an attempt to justify different results based on the identity of the injured victims as violative of this state's public policy. *See Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209, 643 P.2d 441 (1982). Our decision in *Wiscomb* was premised partially on the realization that exclusions based on the identity of the injured party permit such distinctions to divert attention from the real issue of the conduct of the driver— the party who is or may be negligent. *Wiscomb*, at 209. We discern no better reason under these circumstances to reach a different result based on the identity of the injured party, whether it be the guest herself or a third party injured by the guest.

*Wilson*, 98 Wn.2d at 439-40.

The majority claims the applicability of *Wilson* to commercial vendors is "dubious". Majority, at 40. The court in *Wilson* spoke directly to the error of varying any tort duty by the identity of the victim. The majority also claims that the purpose of the duty on commercial vendors is to protect innocent bystanders and minors. On this point, the majority ignores what we have said before.

> The postdramshop act cases of this court addressing the duty not to furnish intoxicating liquor to an obviously intoxicated person commonly involve automobile accidents. In such cases, the plaintiff seeks recovery directly from the one who furnished intoxicating liquor to the person causing the accident. It follows that the general type of harm encompassed by this duty is that of alcohol-induced driver error. Driver error is a commonly understood and foreseeable consequence of serving intoxicants to an already obviously intoxicated person.

(Footnotes omitted.) *Christen*, 113 Wn.2d at 495-96. The

purpose of the obvious intoxication exception is to prevent accidents by drunk drivers.

Foreseeability, rather than the identity of the injured party, limits the scope of the commercial vendor's duty. In *Christen*, we ruled that

> "the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." *Maltman v. Sauer*, 84 Wn.2d 975, 981, 530 P.2d 254 (1975). The limitation imposed thereby is important because, as this court has previously observed, "a negligent act should have some end to its legal consequences." *Hunsley v. Giard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976).

(Footnote omitted.) *Christen*, 113 Wn.2d at 492. A commercial vendor's sale of alcohol to an obviously intoxicated customer is a negligent act. The foreseeability of subsequent injuries, not the status of the injured party, bounds the legal consequences of this negligence.

Here, dangerous driving was a foreseeable consequence of serving alcohol to the already obviously intoxicated patrons. *Christen*, 113 Wn.2d at 495-96.

The majority's arguments for limiting the bartender's duty have been unpersuasive in the past and are unpersuasive now. The arguments are cover for the unstated premise of the majority's decision: intoxicated patrons are wholly at fault for their injuries and should never recover damages.

The structure of the majority's opinion points to this hidden premise. Using moralistic phrases like "self-inflicted", "absolve", and "callow and imprudent behavior", the majority casts blame on the intoxicated patron. This majority is arguing about fault, about who is to blame for the injuries.

Absent from the majority's arguments is any discussion of the bartender's responsibilities. The obvious intoxication exception recognizes a simple truth: once a person is intoxicated, *and the bartender knows it,* the bartender, not the patron, makes the decision of whether the patron has

another drink. This responsibility comes with the business.

Specific arguments by the majority also reveal the underlying premise of fault. To distinguish third parties from patrons, the majority announces: "[a]s a matter of public policy, we have premised the duty of commercial vendors on the need to protect innocent bystanders from intoxicated patrons". Majority, at 40-41 (citing *Christen*, 113 Wn.2d at 497). According to the majority, it is the injured third party's innocence, his or her complete lack of fault, which justifies recovery.

The majority, not precedent, imposes this requirement of innocence. Under Washington law, an injured third party need not be innocent to recover damages from a bartender for overservice. Instead, the Legislature has directed triers of fact to weigh the comparative fault of responsible parties.

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages . . . [.]

RCW 4.22.070(1). We would not deny the existence of a duty to a third party if that third party shared some fault for his or her injuries. The innocence of the third party is relevant to fault, not duty.

The same principle applies to first-party claims. A customer's responsibility for his own drunkenness is an issue of fault. If a customer were at fault for his injuries, as the Family Tavern's lawyer contended at trial, the jury would consider this in reaching a verdict.

The Legislature has also limited a patron's right to recover for intoxication. Under RCW 5.40.060(1),

> it is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or

death and the trier of fact finds such person to have been more than fifty percent at fault.

When the intoxicated party is at fault for a majority of his or her injuries, the Legislature has determined that the intoxicated party is responsible for the entire amount of damages. An intoxicated customer who is more than 50 percent at fault for his or her injuries would therefore not recover damages from a commercial vendor.

The jury in Kelly's case reached an appropriate verdict under these two rules. The court instructed the jury correctly on comparative fault and the 50 percent rule, and the parties argued their cases. Plaintiff's counsel acknowledged the dual responsibility of Kelly and the Family Tavern; Defendant's counsel argued that Kelly alone was responsible for his drinking and his death. After submitting a question to the judge on the 50 percent rule, the jury returned a verdict for Plaintiff and divided the fault 50-50.

The court should respect the ability of juries to determine responsibility. By adopting comparative fault, the Legislature has given juries the obligation to determine the moral responsibility of the parties in a case of negligence. A first-party claim against a commercial vendor is no different. Rather than conclude a customer has no right to sue a tavern, the court should permit a jury to determine the relative fault of tavern and customer in a case of obvious intoxication.

I would affirm the judgment of the Superior Court in *Estate of Kelly v. Falin*, and reverse the summary judgment of the Superior Court in *Wolfram v. Lahaina Louie's Pub & Cafe*.

JOHNSON, J., and UTTER, J. Pro Tem., concur with GUY, J.

Reconsideration denied September 7, 1995.