151 P.3d 1073 (2007)
Terry LINVILLE and Julie Linville, husband and wife, individually and on behalf of J.L., a minor; Timothy Ryan and Tammi Ryan, husband and wife, individually and on behalf of T.H.R., a minor; Michael Murray and Iesha L. Hall, individually and on behalf of D.H., a minor; and on behalf of a class of similarly situated Plaintiffs, Appellants,
v.
STATE of Washington, Respondent.
No. 34654-1-II.
Court of Appeals of Washington, Division 2.
February 6, 2007.
*1074 James Francois Leggett, Leggett and Kram, Tacoma, WA, for Appellants.
Michael E. Johnston, Peter John Helmberger, Office of the Attorney General, Olympia, WA, for Respondent.
HUNT, J.
¶ 1 Terry Linville, his wife, their child, and two other children's families[1] attempted to represent a class of children sexually abused in private, state-licensed, daycare facilities whose private liability insurance policies excluded coverage for such abuse. Linville and the other named plaintiffs appeal the trial court's summary judgment dismissal of their class action against the State of Washington for negligent failure to implement chapter 48.88 RCW, which creates a Joint Underwriting Agency to provide liability insurance for daycare providers unable to obtain private insurance.
¶ 2 The Linville plaintiffs argue that the trial court (1) wrongly denied their request for class certification, (2) erred in its discovery rulings, and (3) erroneously granted the State's motion for summary judgment based on plaintiffs' failure to show that the State owed them a duty to provide insurance coverage for their claims. We hold that in enacting chapter 48.88 RCW, the Legislature created no State duty to victims of sexual abuse by private daycare providers. Therefore, we affirm.

FACTS
¶ 3 The three named plaintiff children were sexually abused while attending two private, Pierce County, daycare facilities. The daycare providers' private homeowner's-liability insurance policies exempted from coverage claims arising from sexual assault. Consequently, the daycare providers' insurance companies denied compensation for the Linville plaintiffs' sexual assault claims.
¶ 4 The Linville plaintiffs sued the State of Washington, without naming a specific state agency.[2] They claim that the State failed to act on chapter 48.88 RCW's mandate to create a Joint Underwriting Agency (JUA) that would provide liability insurance for daycare providers otherwise unable to obtain insurance in the private market. The Linville plaintiffs did not, however, also sue the individual *1075 daycare providers where the children were abused.

I. DISCOVERY
¶ 5 The Linville plaintiffs submitted detailed interrogatories seeking (1) the identity of homeowner insurers offering policies without sexual abuse exclusions; (2) the frequency of sexual assaults on children attending licensed daycare facilities by teenage boys residing at those facilities; (3) information about the State officials responsible for implementing chapter 48.88 RCW; (4) information about whether the State provided information to daycare licensees about the JUA's existence; and (5) contact information for former and present legislators, lobbyists, and the Office of the Insurance Commissioner (OIC) executives. The Linville plaintiffs also sought to depose the Insurance Commissioner, two former Insurance Commissioners, and four former legislators who had worked on chapter 48.88 RCW.
¶ 6 The State responded by (1) answering some interrogatories, (2) objecting to most of the requests for information as being overly broad or outside OIC's knowledge or control, (3) arguing that the depositions were inappropriate under the common law "deliberative process" privilege, and (4) objecting to the proposed depositions of the former legislators because their opinions about the legislative intent of chapter 48.88 RCW would be inadmissible. The Linville plaintiffs moved to compel discovery. The State moved for a protective order.
¶ 7 Agreeing with the State that the proper defendant was OIC, rather than the entire State of Washington, the trial court ruled that (1) OIC could be responsible only for information and documents within its possession, and (2) the plaintiffs could not compel OIC to answer questions in areas it did not regulate or to produce documents located in other State agencies.
¶ 8 Agreeing with the State's objection to the requested depositions, the trial court noted a general policy protecting public officials from the discovery process, and gave the State 30 days to provide an alternative avenue for the Linville plaintiffs to obtain this information by some means other than formally deposing high-level public officials. The trial court also ruled that several interrogatories concerning chapter 48.88 RCW's legislative history merely sought basic legal research, which it would not compel the State to perform for the plaintiffs.
¶ 9 A month later, the State presented the Linville plaintiffs with a list of potential alternative deponents  primarily various deputy commissioners during the past three administrations. These alternative deponents presumably had knowledge of OIC's chapter 48.88 RCW-related activities over the previous 20 years.

II. SUMMARY JUDGMENT
¶ 10 The State moved for summary judgment. The Linville plaintiffs moved to continue the summary judgment proceeding until after they completed discovery.[3] Reasoning that the proposed discovery would have no effect on the summary judgment issue  whether the State owed a duty to the plaintiffs, the trial court denied the continuance.
¶ 11 The State argued that the Linville plaintiffs' action was a tort claim and that because they failed to show that the State owed them any duty, the State was entitled to summary judgment as a matter of law.
*1076 ¶ 12 After hearing argument, the trial court granted summary judgment for the State, stating:
[T]his is a tort case, it is not a contract case, and in order for the plaintiffs to prevail, they must demonstrate a duty, and the field of persons to which a duty would be extended in this case is broader than any case authority I'm aware of and would require an extension of the duty doctrine in the State of Washington that this Court is not prepared to make.
RP (March 17, 2006) at 40. The trial court further ruled that even if a duty existed, the public duty doctrine applied, and there was no exception to the public duty doctrine that would allow the plaintiffs to recover.

III. DENIAL OF CLASS CERTIFICATION
¶ 13 The trial court refused to certify the proposed plaintiff class because it failed to meet the CR 23 numerosity requirement.
¶ 14 The Linville plaintiffs appeal the trial court's grant of summary judgment, discovery rulings, and denial of class certification.

ANALYSIS
¶ 15 The Linville plaintiffs argue that (1) chapter 48.88 RCW required the State of Washington to create a JUA that would provide liability insurance for daycare providers unable to obtain insurance from the voluntary insurance market, (2) the State negligently failed to carry out this duty, (3) erroneously ruled that plaintiffs failed to establish such a duty, and (4) the trial court erroneously granted the State's motion for summary judgment dismissal of their class action. We disagree.
¶ 16 In a negligence action, we first address the threshold question of whether the defendant owes a duty of care to the injured plaintiff. Estate of Kelly v. Falin, 127 Wash.2d 31, 36, 896 P.2d 1245 (1995). "A duty can arise either from common law principles or from a statute or regulation." Doss v. ITT Rayonier, Inc., 60 Wash.App. 125, 129, 803 P.2d 4, review denied, 116 Wash.2d 1034, 813 P.2d 583 (1991). The existence of a legal duty is a question of law, which we review de novo. Hansen v. Friend, 118 Wash.2d 476, 479, 824 P.2d 483 (1992). If a plaintiff cannot establish that the defendant owes a duty of care, we need not determine the remaining elements of a negligence claim. Folsom v. Burger King, 135 Wash.2d 658, 671, 958 P.2d 301 (1998). Such is the case here.

I. No COMMON LAW DUTY
¶ 17 At common law, the State was immune from lawsuit. At common law, "it is not a tort for government to govern" or, conversely, not to govern. Evangelical United Brethren Church v. State, 67 Wash.2d 246, 253, 407 P.2d 440 (1965), quoting Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (Jackson, J. dissenting) (finding no duty on the executive to plaintiff when the executive is making policy-based decisions). Consequently, the State owes no common law duty to victims of daycare sexual abuse either generally to implement a statute or specifically to provide insurance for licensed daycare facilities.
¶ 18 Only where the Legislature has expressly waived sovereign immunity by statute can there be the possibility of an actionable duty owed by the State. Donohoe v. State, 135 Wash.App. 824, 832, 142 P.3d 654, 657 (2006).

II. NO STATUTORY DUTY
¶ 19 Thus, the issue here is whether chapter 48.88 RCW or chapter 284-70 WAC created a statutory or regulatory duty to provide private daycare insurance that the State owed to the Linville plaintiffs. The answer is no.

A. Standard of Review
¶ 20 Construction of a statute is a question of law, which we review de novo under the error of law standard. Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992); Inland Empire Distrib. Sys., Inc. v. Util. & Transp. Comm'n, 112 Wash.2d 278, 282, 770 P.2d 624 (1989). Our obligation is to give effect to the Legislature's intent. These rules of statutory interpretation also apply when we review agency regulations. See State v. Reier, 127 *1077 Wash.App. 753, 757-58, 112 P.3d 566 (2005), review denied, 156 Wash.2d 1019, 132 P.3d 735 (2006).
¶ 21 Our review begins with the statute's or regulation's plain language. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). Where a statute or regulation is unambiguous, we determine legislative intent from the statutory or regulatory language alone.; In re the Residence of Eaton, 110 Wash.2d 892, 898, 757 P.2d 961 (1988).

B. Statutory and Regulatory History
¶ 22 In 1986, the State of Washington enacted chapter 48.88 RCW of the Insurance Code because daycare providers had experienced "major problems in both the availability and affordability of liability insurance." RCW 48.88.010. Our Legislature recognized that quality daycare services are critical for maintaining a productive workforce and family self-sufficiency and that the lack of insurance for daycare operators would decrease the availability of necessary services. In response, the Legislature "intended to remedy the problem of unavailable liability insurance for day care services by requiring all insurers authorized to write commercial or professional liability insurance to be members of a joint underwriting association [JUA] created to provide liability insurance for day care services." RCW 48.88.010.
¶ 23 RCW 48.88.020 defines "day care insurance" as:
insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of the death or injury of any person as the result of negligence or malpractice in rendering professional service by any licensee.
(Emphasis added.)
¶ 24 To achieve the Legislature's goal of daycare service availability, the Office of the Insurance Commissioner (OIC) had to approve "a reasonable plan for the establishment of a nonprofit, joint underwriting association [JUA] for day care insurance, subject to the conditions and limitations contained in this chapter." RCW 48.88.030. In creating the JUA, the Legislature delegated authority to the Insurance Commissioner to "adopt all rules necessary to ensure the efficient, equitable operation of the association, including but not limited to, rules requiring or limiting certain policy provisions." RCW 48.88.070.
¶ 25 OIC promulgated regulations that keep the JUA inactive until the "commissioner finds that any licensee is unable to obtain day care insurance with liability limits of at least one hundred thousand dollars per occurrence from the voluntary insurance market, or through any market assistance plan organized pursuant to section 906, chapter 305, Laws of 1986 . . ." WAC 284-78-040. With respect to child abuse and child sexual abuse, the OIC regulations further provide:
A policy shall be offered which provides liability coverage with respect to child abuse, whether a sexual nature or not. In the discretion of the association, such policy may exclude from coverage an individual who directly commits or participates in the actual abuse, but it may not exclude from coverage other persons who may be liable only vicariously for such abuse. In addition, the association may offer coverage with a broader exclusion with respect to coverage for child abuse.

WAC 284-78-100(3) (emphasis added).
¶ 26 In the 20 years since the Legislature enacted chapter 48.88 RCW and OIC promulgated the corresponding regulations, there have been no amendments to the law or challenges to the regulations.

C. Statutory and Regulatory Language

1. No express duty
¶ 27 There is no express language in chapter 48.88 RCW that articulates a duty the State owes to sexual abuse victims with respect to daycare insurance coverage.

2. No implied duty
¶ 28 Nor does chapter 48.88 RCW imply such a duty.
¶ 29 Washington courts employ a three-part test to determine whether a statute or regulation creates an implied duty: (1) "whether the plaintiff is within the class for whose `especial' benefit the statute was enacted"; *1078 (2) "whether legislative intent, explicitly or implicitly, supports creating or denying a remedy"; and (3) "whether implying a remedy is consistent with the underlying purpose of the legislation." Bennett v. Hardy, 113 Wash.2d 912, 920-21, 784 P.2d 1258 (1990). See also Aba Sheikh v. Choe, 156 Wash.2d 441, 457, 128 P.3d 574 (2006). The Linville plaintiffs satisfy none of these Bennett test factors.[4]
¶ 30 First, our Legislature expressly enacted chapter 48.88 RCW to ensure daycare operators' continued existence. RCW 48.88.010. In so doing, however, it included no statutory language implicitly or explicitly stating that it enacted the statute for the special benefit of sexual abuse victims at licensed daycare facilities. Moreover, (1) neither the statute nor the regulations require daycare operators to possess insurance coverage for intentional torts involving sexual misconduct; and (2) the regulations imply that, if the JUA offers insurance coverage for daycare providers, these policies can exclude coverage for sexual abuse. See WAC 284-78-100(3) ("In addition, the association may offer coverage with a broader exclusion with respect to coverage for child abuse.").
¶ 31 Furthermore, even if the JUA had offered the type of insurance that the Linville plaintiffs contend the statute requires, such offer would not have benefited them. WAC 284-78-090 provides that a daycare operator can obtain insurance through the JUA only if "unable to obtain day care insurance with liability limits of at least one hundred thousand dollars per occurrence from the voluntary insurance market or from any market assistance plan. . . ." (Emphasis added.) The daycare operators here, however, already had liability insurance from the voluntary insurance market; thus, they would have neither needed nor qualified for JUA assistance. Again, the Linville plaintiffs show no connection between the State's non-implementation of the JUA and their daycare operators' insurance policy exclusions for sexual abuse of their daycare attendees.
¶ 32 Second, there is no evidence of explicit or implicit legislative intent that, in promulgating chapter 48.88 RCW, our Legislature contemplated creating a remedy for victims of daycare sexual abuse such as the Linville plaintiffs and their families. Both the statute and the legislative history are silent about whether daycare abuse victims should have a publicly-funded remedy against the State if a homeowner's liability insurance coverage excludes intentional sexual abuse. Bennett, 113 Wash.2d at 920-21, 784 P.2d 1258; see also Aba Sheikh, 156 Wash.2d at 458, 128 P.3d 574 (plaintiff did not satisfy the second prong of the Bennett when the statute related to licensing foster homes as opposed to offering services to dependent children).
¶ 33 Third, judicially implying a remedy is inconsistent with the underlying purpose of this legislation. Bennett, 113 Wash.2d at 920-21, 784 P.2d 1258. The Legislature enacted chapter 48.88 RCW to guarantee daycare facilities' access to insurance so they could remain open and available for working families. RCW 48.88.010. In defining "day care insurance," the Legislature included coverage for claims arising from the "result of negligence or malpractice in rendering professional service by any licensee." RCW 48.88.020(2). We fail to see how implying a monetary damages award to children injured by intentional sexually assaultive torts or crimes at daycare facilities is consistent with our Legislature's statutory purpose to improve the availability of general liability insurance for daycare providers. Absent express legislative intent to provide such coverage, we will not act judicially to imply such a remedy.
¶ 34 Because there is no common law duty the State owes to the Linville plaintiffs, the statute creates no such duty, and the Linville plaintiffs fail to establish an implicit duty under the Bennett test, they have no cause of action against the State here. We hold, therefore, that the trial court properly granted *1079 summary judgment dismissal of the Linville plaintiffs' claims.[5]
¶ 35 Affirmed.
We concur: HOUGHTON, C.J., and ARMSTRONG, J.
NOTES
[1] The other two named plaintiff-families are Timothy and Tammi Ryan, and Michael Murray and Iesah Hall.
[2] This case traces its origin to two other cases pending in the Washington court system:

In August 2004, Michael Murray and Iesah Hall filed an action on behalf of their son against their private daycare provider, the State of Washington, and the Department of Social and Health Services (DSHS), No. 04-2-10538-8. Murray and Hall attempted to compel depositions and documents from non-party state actors, including the Office of the Insurance Commissioner (OIC). We denied discretionary review of the trial court's denial of Murray and Hall's discovery request. Subsequently, Murray and Hall dismissed their individual action, without prejudice.
The following year, in October 2005, Murray and Hall filed a second suit against their daycare provider and the State of Washington, primarily alleging negligent daycare licensing, No. 05-2-1258-0. Murray and Hall did not name DSHS in this lawsuit, which apparently remains ongoing in the trial court and is not part of this appeal.
[3] The Linville plaintiffs asked the trial court for a continuance under CR 56(f), arguing that they needed time to depose the witnesses in order to respond to the State's motion. The Linville plaintiffs believed that the depositions would shed light on the legislative intent behind the statute and the regulations, as well as any possible scheme between OIC and insurance company lobbyists in choosing not to activate the JUA.

The trial court (1) denied the continuance because the Linville plaintiffs' request implied a case based on the "intent of the people who wrote the [Washington Administrative Code]," Report of Proceedings (RP) (March 17, 2006) at 8; (2) questioned, "Well, could we possibly? Could there ever be such a trial? I have never heard of such a thing." RP (March 17, 2006) at 8; and (3) concluded that the primary issue in this case is duty, which is a legal rather than a factual question and, thus, the trial court could proceed with the summary judgment hearing. RP (March 17, 2006) at 10.
[4] The Linville plaintiffs do not address these factors in their brief. Thus, we can refuse to address them under RAP 10.3(a)(5). Nevertheless, for guidance in future cases, we address them briefly.
[5] Because we affirm the trial court's threshhold ruling that the State owed the Linville plaintiffs no duty to offer private daycare providers insurance against sexual abuse of children in their care, we do not address either the public duty doctrine and its exceptions or the Linville plaintiffs' additional arguments that (1) the State negligently failed to implement the JUA, (2) their failure to do so impeded daycare operators' obtaining insurance for sexual assaults perpetrated by their own family members, and (3) the trial court erred in failing to compel discovery, in granting the State's request for a protective order, and in refusing to certify their class.