[No. 52270-7. En Banc. May 28, 1987.]

DAVID PURCHASE, *Petitioner*, v. MARY MARGARET MEYER, *Petitioner*, EL TORITO RESTAURANT AND CANTINA, *Respondent*.

*Michael Carroll,* for petitioner Purchase.

*Dan M. Albertson* and *Albertson & Smith,* for petitioner Meyer.

*Lane, Powell, Moss & Miller,* by *Michael H. Runyan* and *David M. Schoeggl,* for respondent.

ANDERSEN, J.—
### FACTS OF CASE
This case deals with the liability of a commercial purveyor of intoxicating beverages that sells such beverages to a minor who later injures a third person while under the influence of alcohol.

On September 22, 1983, petitioner Mary Margaret Meyer

spent several hours with a group of friends socializing in the cocktail lounge of the El Torito restaurant in Tacoma. Although Meyer's friends were approximately 25 years of age or older, Meyer herself was only 19 at the time. She reported having three margaritas, but said she did not finish her last drink. She also ate several baskets of tortilla chips. Meyer and her friends claim that Meyer was not asked for proof that she was 21, the legal drinking age. El Torito, on the other hand, claims that it had in force a strictly adhered to policy requiring identification of all youthful–appearing customers.

Meyer said she was not intoxicated when she left El Torito. She also said that a friend who walked with her to her car similarly did not believe she was intoxicated and allowed her to drive home by herself. Neither of Meyer's companions that evening who submitted affidavits on behalf of petitioners say that she appeared intoxicated while she was at the El Torito. Nothing in the record suggests that anyone who saw Meyer at the El Torito believed that she appeared intoxicated.

Some time after leaving the El Torito, Meyer was involved in an automobile accident with petitioner David Purchase, who was riding a motorcycle. Some 3½ to 4 hours after leaving the El Torito, and even longer after being served her last drink there, Meyer was given an alcohol breath test. Her alcohol breath test reading showed a .13 blood alcohol content (bac). Meyer was not injured in the accident.

Purchase sued Meyer and also joined El Torito as a party defendant claiming that its employees were negligent per se for having served alcohol to Meyer, a minor. Purchase also claimed that El Torito employees had negligently served alcohol to Meyer in that she was "obviously intoxicated" at the time. Meyer cross–claimed against El Torito seeking contribution.

On November 1, 1985, the Superior Court for Pierce County entered an order denying defendant El Torito's motion for summary judgment on the "obvious intoxica-

tion" claim but granting El Torito's motion for summary judgment on the negligence per se claim and dismissing that claim. We granted the parties' motions for direct discretionary review of the trial court's ruling on both claims.

Thus, two issues are presented to this court.

## ISSUES

ISSUE ONE. Did the trial court err in not granting a summary judgment dismissing the sale of liquor to an "obviously intoxicated" person claim against El Torito?

ISSUE TWO. May a third party injured by a minor driver, who is operating a motor vehicle while under the influence of intoxicating liquor, maintain a negligence per se claim against a commercial purveyor of alcoholic beverages which earlier sold alcoholic beverages to the minor?

## DECISION

ISSUE ONE.

CONCLUSION. Insofar as a cause of action for furnishing intoxicating liquor to an "obviously intoxicated" person is concerned, the results of a blood alcohol test (by an alcohol breath testing machine) and an expert's opinion based thereon, and the physical appearance of that person at a substantial time after the intoxicating liquor was served, are not by themselves sufficient to get such a cause of action past a motion for summary judgment. Whether a person is "obviously intoxicated" or not is to be judged by that person's appearance at the time the intoxicating liquor is furnished to the person. On the basis of the record before us, El Torito's motion for summary judgment of dismissal on this liability issue should have been granted by the trial court.

Generally speaking,[1] persons convicted of driving "while

---

[1] It seems to be characteristic of the statutes relating to driving while under the influence of intoxicating liquor that they are continually being changed by the Legislature. Accordingly, the statutory references in this general paragraph, unless otherwise indicated, are references to current statutes. The predecessors of these current statutes, however, had similar counterparts which were in effect at all times herein.

under the influence of intoxicating liquor" face criminal penalties including fines, imprisonment and suspension or revocation of their driver's license.[2] They are also civilly liable for damages caused by such driving.[3] In this state, anyone operating a motor vehicle on a public roadway is deemed to have given consent to abide by the implied consent statute which requires that, under certain circumstances, a driver take a breath or other test for blood alcohol content or face yet additional penalties.[4] By the statute in effect at the time of the accident herein, a person was deemed "under the influence of intoxicating liquor" if he or she was apprehended driving a vehicle within this state while having a blood alcohol content of .10 or more by weight.[5] Also by statute, evidence of a driver's bac may be considered in both criminal and civil actions in determining whether the driver was in fact "under the influence of intoxicating liquor" at the time of the accident.[6]

For concerned drivers, both the Washington State Liquor Control Board and the Washington Traffic Safety Commission have published and distributed simple charts which drivers can use to determine their own bac. Depending on body weight and the time elapsed since the first drink, some people, for example, can reach a .10 bac after imbibing just 4 ounces of alcohol.[7] While the public policy evinced by the foregoing statutes is designedly tough, these

---

[2] RCW 46.61.515.

[3] *Burget v. Saginaw Logging Co.,* 197 Wash. 318, 321–22, 85 P.2d 271 (1938); *Lubliner v. Ruge,* 21 Wn.2d 881, 884, 153 P.2d 694 (1944).

[4] RCW 46.20.308.

[5] Laws of 1979, 1st Ex. Sess., ch. 176, § 1, p. 1628; *see* RCW 46.61.502.

[6] RCW 46.61.506.

[7] *See* Wash. Traffic Safety Comm'n, *The New Law Is Tough* (June 1983) (brochure); Washington State Liquor Control Board, *Blood Alcohol Concentration (B.A.C.) Guide* (Dec. 1984). Wallet sized bac cards are presently available at State Liquor Control Board outlets.

laws are essentially fair in the sense that people who drink intoxicating beverages are themselves aware of how much alcohol they are imbibing and can approximate whether their bac is high enough to make driving illegal.

There is also a strong public policy against selling liquor to intoxicated persons. Since 1933, a section of the Washington State Liquor Act has provided as follows:

> No person shall sell any liquor to any person apparently under the influence of liquor.

RCW 66.44.200. This statute is enforced against commercial purveyors of alcoholic beverages by agents of the Washington State Liquor Control Board. Local ordinances to this same effect are also enforced by local police agencies. Commercial purveyors of alcoholic beverages who violate the foregoing statute not only face criminal sanctions,[8] but also risk suspension or revocation of their licenses to sell alcoholic beverages in this state.[9]

Insofar as civil liability is concerned, it has long been the common law of this state that a commercial purveyor of alcoholic beverages may be held liable for damages caused by furnishing intoxicating beverages to an "obviously intoxicated" person.[10] Although the person to whom alcoholic beverages are sold knows how much alcohol he or she has had to drink before entering an establishment and making a purchase, the seller ordinarily has no way of knowing that unless and until the purchaser becomes "obviously intoxicated". Furthermore, as one prominent medical commentator in this field has observed,

> by the time the blood alcohol level reaches .10%, all persons are impaired to objective tests of vision, problem solving, etc. although the heavy drinker may still not

---

[8]RCW 66.44.180.

[9]*See* RCW 66.08.150; RCW 66.24.010(3).

[10]*Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 762–63, 458 P.2d 897 (1969); *Wilson v. Steinbach,* 98 Wn.2d 434, 438, 656 P.2d 1030 (1982); *Young v. Caravan Corp.,* 99 Wn.2d 655, 658, 663 P.2d 834, 672 P.2d 1267 (1983).

appear intoxicated even with a blood alcohol level above .20%.[11]

It does not follow, therefore, that a person who is apprehended driving with a bac of .10 (and who may therefore be found guilty of violating the motor vehicle code by driving while "under the influence" of intoxicating liquor) was also "obviously intoxicated" for purposes of the Washington State Liquor Act when, at some earlier time, an intoxicating beverage was sold to that person.

■ For the foregoing reasons, and for other medically recognized variables in the way alcohol may react on the human body,[12] the following rule has been adopted in this state:

> The settled rule in this state as to actions based on the *Halvorson [v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 458 P.2d 897 (1969)]* line of cases is that a person's sobriety must be judged by the way she appeared to those around her, not by what a blood alcohol test may subsequently reveal. *Barrie v. Hosts of Am., Inc.,* [94 Wn.2d 640,] 643 n.1[, 618 P.2d 96 (1980)]; *Shelby v. Keck,* 85 Wn.2d 911, 915, 541 P.2d 365 (1975).

*Wilson v. Steinbach,* 98 Wn.2d 434, 439, 656 P.2d 1030 (1982).[13] Thus, the results of the alcohol breath test taken hours after the minor was served alcoholic beverages at the

---

[11]Boston University Law–Medicine Inst., *The Legal Issues in Alcoholism and Alcohol Usage* 71, 76 (1965). *See also* American Med. Ass'n, *Alcohol and the Impaired Driver,* at 9–11 (1970); A. Moenssens & F. Inbau, *Scientific Evidence in Criminal Cases* § 2.01, at 74 (2d ed. 1978).

[12]The outward signs of intoxication may vary from person to person depending on the rate alcohol is absorbed into the bloodstream, which in turn is influenced by disease, the use of drugs or medication, the presence of food in the stomach and the type of alcohol consumed. *Alcohol and the Impaired Driver,* at 15–16. Moreover, the symptoms of intoxication may vary depending on whether a person's bac is rising or falling. Thus, a person with a rising bac of .14 may appear more intoxicated than a person with a bac of .19 that is beginning to fall. *The Legal Issues in Alcoholism and Alcohol Usage,* at 76.

[13]*Accord, Young,* at 659; *Dickinson v. Edwards,* 105 Wn.2d 457, 462 (plurality opinion by Brachtenbach, J.) and 493 (Durham, J., dissenting), 716 P.2d 814 (1986).

El Torito restaurant was not competent evidence against El Torito.[14] The pharmacologist's affidavit purporting to relate Meyer's blood alcohol content back to what it was when she was last served at the El Torito, and then from that to determine what he claims was the "obviousness" of her intoxication at the time of the last serving, is based entirely on the inadmissible alcohol breath testing results. It suffers from the same legal infirmities as the test results and is speculative.[15] There is thus no competent evidence in the record to establish that Meyer appeared "obviously intoxicated" to those around her when she was served at the El Torito.

The investigating officer's testimony as to how Meyer appeared to him at the scene of the accident an hour or two later does not cure this defect. It is argued that *Dickinson v. Edwards,* 105 Wn.2d 457, 716 P.2d 814 (1986) holds to the contrary of the foregoing; it does not. That case was factually unique in that a driver's vehicle hit another vehicle head on just 5 minutes after leaving a drinking establishment, whereupon the driver promptly admitted to having had 15 to 20 drinks. The plurality opinion in *Dickinson* determined that under these circumstances, an officer who saw the driver in a falling down drunk condition just 5 minutes after the accident (thus only 10 minutes after the driver had left the place where the intoxicants were served to him) could testify that the driver appeared obviously intoxicated, and that this was sufficient to get past a defense motion for summary judgment on the "obvious intoxication" at time of serving issue. The facts of the case before us are unlike those in *Dickinson;* the very close time

---

[14]*Wilson,* at 439; *Dickinson,* at 463 (plurality opinion by Brachtenbach, J.) and at 493–94 (Durham, J., dissenting); *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642–44, 618 P.2d 96 (1980); *Shelby v. Keck,* 85 Wn.2d 911, 915–17, 541 P.2d 365 (1975).

[15]*See Barrie,* at 643 n.1. *See also Curtiss v. YMCA,* 82 Wn.2d 455, 466, 511 P.2d 991 (1973); *Clements v. Blue Cross of Wash. & Alaska, Inc.,* 37 Wn. App. 544, 549–50, 682 P.2d 942, *review denied,* 102 Wn.2d 1016 (1984).

proximity of service of alcohol to when the driver was seen obviously intoxicated following the accident, which existed in *Dickinson,* is absent here. The trial court erred in not granting El Torito's motion for summary judgment on the "obvious intoxication" issue.[16]

ISSUE TWO.

CONCLUSION. The state statute (RCW 66.44.320) which makes it unlawful to sell intoxicating liquor to a minor represents the minimum standard of conduct for commercial purveyors of alcoholic beverages. A third party can maintain a negligence per se claim against a commercial purveyor of intoxicating liquor whose breach of this duty is a proximate cause of damages to the third party. The trial court erred when it granted a summary judgment dismissing the negligence per se claim against El Torito.

The sale of liquor to minors statute contained in RCW Title 66, the Washington State Liquor Act, is explicit:

> Every person who shall sell any intoxicating liquor to any minor shall be guilty of a violation of Title 66 RCW.

RCW 66.44.320. The injured petitioner, Purchase, contends that El Torito is negligent per se for having served margaritas, an alcoholic beverage, to the 19–year–old Meyer. We agree and reverse the trial court on this issue.

■ A violation of the sale to minors statute (RCW 66.44.320) is negligence per se.[17] The duty imposed by that statute is not owed to minors alone, but to members of the general public as well.[18] Thus, the petitioner Purchase who was injured in the collision with Meyer's automobile has an actionable claim against El Torito. The cases of *Hostetler v. Ward,* 41 Wn. App. 343, 704 P.2d 1193 (1985), *review*

---

[16]CR 56. *See Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982); *Barrie,* at 642.

[17]*Young v. Caravan Corp.,* 99 Wn.2d 655, 660, 663 P.2d 834, 672 P.2d 1267 (1983).

[18]*Callan v. O'Neil,* 20 Wn. App. 32, 39, 578 P.2d 890 (1978); *Baughn v. Malone,* 33 Wn. App. 592, 595–96, 656 P.2d 1118 (1983); RCW 66.08.010. *See Dickinson,* at 480.

*denied,* 106 Wn.2d 1004 (1986) and *Hulse v. Driver,* 11 Wn. App. 509, 524 P.2d 255, *review denied,* 84 Wn.2d 1011 (1974), urged as controlling by El Torito, are not pertinent here because, unlike the case before us, the issue of selling intoxicating liquor to minors in direct contravention of a provision of the Washington State Liquor Act was not before the court. The trial court herein erred in granting a summary judgment dismissing the negligence per se claim.

This case having come before us at a relatively early stage of the proceedings, we have not dealt with all possible legal issues in this opinion. For example, where a minor has violated statutes prohibiting persons under 21 from consuming[19] or purchasing[20] intoxicating liquor, the minor's contributory negligence may be an issue under some circumstances, depending on the claims made.[21] Proximate cause remains an unresolved issue of fact in this case, as does the question of whether El Torito took reasonable precautions to determine Meyer's age before serving liquor to her.[22] The issue of Meyer's right to contribution from El Torito was not argued in this court, aside from being mentioned in a footnote in one of the appellate briefs, so we have not addressed any aspect of that claim. Because the recently enacted statute abolishing most negligence per se actions[23] applies only to cases filed on or after August 1, 1986,[24] it is not applicable to this case and need not be addressed.

 Subsequent to the writing of this opinion, the parties advised us that this case had settled. We accordingly

---

[19]RCW 66.44.270.

[20]RCW 66.44.290.

[21]*Young,* at 661–62.

[22]*Young,* at 660–62; *Callan,* at 40. *See also* RCW 66.20.180–.210.

[23]Laws of 1986, ch. 305, § 901, p. 1365.

[24]Laws of 1986, ch. 305, § 910, p. 1367.

230

are guided by the considerations set forth in *In re Myers,* 105 Wn.2d 257, 261, 714 P.2d 303 (1986):

> As a general rule, this court will dismiss an appeal if it presents moot issues. *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). In *Sorenson,* however, the court recognized an exception to this rule "when it can be said that matters of continuing and substantial public interest are involved." *Sorenson,* at 558. The court must consider three criteria in determining whether the requisite degree of public interest exists: (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue. *Sorenson,* at 558.

Because we have determined that this case contains a high degree of public interest, particularly in the guidance it provides public officers and the likelihood of the issue recurring, the opinion will be filed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.