IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| KIMBERLY J. GERLACH,<br><br>    Respondent,<br><br>    v.<br><br>THE COVE APARTMENTS, LLC, a<br>Washington corporation; and WEIDNER<br>PROPERTY MANAGEMENT, LLC, a<br>Washington corporation,<br><br>    Appellants,<br><br>    and<br><br>WEIDNER APARTMENT HOMES, a<br>Washington business entity, dba<br>The Cove Apartments, and WEIDNER<br>ASSET MANAGEMENT LLC, a<br>Washington corporation,<br><br>    Defendants. | No. 77179-5-I<br><br>ORDER GRANTING MOTION<br>FOR RECONSIDERATION,<br>WITHDRAWING OPINION,<br>AND SUBSTITUTING OPINION |

Respondent, Kimberly J. Gerlach, has filed a motion for reconsideration of the opinion filed in the above matter on March 18, 2019. Appellants, The Cove Apartments LLC and Weidner Property Management LLC, have filed a response to respondent's motion. The court has determined that respondent's motion for reconsideration should be granted, the opinion should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is granted. It is further

No. 77179-5-I/2

ORDERED that the opinion filed on March 18, 2019, is withdrawn and a substitute opinion be filed.

Smith, J.

Andrus, J.

Schindler, J.

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KIMBERLY J. GERLACH, | ) | No. 77179-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THE COVE APARTMENTS, LLC, a | ) | |
| Washington corporation; and WEIDNER | ) | |
| PROPERTY MANAGEMENT, LLC, a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Appellants, | ) | PUBLISHED OPINION |
| | ) | |
| and | ) | FILED: May 13, 2019 |
| | ) | |
| WEIDNER APARTMENT HOMES, a | ) | |
| Washington business entity, dba | ) | |
| The Cove Apartments, and WEIDNER | ) | |
| ASSET MANAGEMENT LLC, a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Defendants. | ) | |

SMITH, J. — Kimberly Gerlach sued The Cove Apartments LLC and Weidner Property Management LLC (collectively Cove) after she fell from a second story apartment balcony with a rotted railing and suffered life threatening injuries. Gerlach was extremely intoxicated at the time of the fall. At trial, Cove sought to limit its liability by proving that Gerlach's intoxication was the proximate cause of her damages and that she was more than 50 percent at fault, in accordance with the affirmative defense of voluntary intoxication under

RCW 5.40.060(1). Because the trial court abused its discretion by excluding evidence of Gerlach's blood alcohol level at the time of the accident and that exclusion prejudiced Cove's ability to prove Gerlach's intoxication proximately caused her injuries, we reverse and remand for a new trial.

## FACTS

On October 26, 2012, Gerlach and her boyfriend Nathan Miller, along with Colin and Brodie Liddell,[1] went to a birthday party and then to a bar within walking distance of Miller's apartment. Miller lived in a second story unit at The Cove Apartments in Federal Way, which were owned by The Cove Apartments LLC and managed by Weider Property Management LLC. After the bar closed in the early hours of October 27, Miller and Colin stopped by a convenience store to buy beer, while Gerlach and Brodie returned to Miller's apartment. Brodie stopped to smoke a cigarette before going inside. While he was smoking, he heard a snap and turned in time to see Gerlach in midair, just before she landed head-first on a concrete step on the ground floor. A rotted railing from Miller's balcony also fell near Gerlach. Gerlach suffered a life threatening head injury as a result of the fall.

Gerlach sued Cove, alleging breach of contract, violations of the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW, and negligence. The breach of contract claim was dismissed on summary judgment because Gerlach was not a tenant and had no contractual relationship with Cove.

---

[1] Because Colin and Brodie Liddell have the same last name, this opinion refers to each by his first name.

Although no one witnessed how Gerlach fell and Gerlach does not remember the events of that night, her theory at trial was that the severely rotted railing on Miller's balcony gave way while she was leaning on it, causing her to fall to the ground. Relying on testimony from a biomechanical expert, Cove proffered an alternative theory: that Gerlach did not have a key to the front door, tried to enter the apartment via the balcony, and fell while trying to climb over the balcony railing from the outside. This theory supported Cove's affirmative defense under RCW 5.40.060(1) that Gerlach was intoxicated at the time of the accident, her intoxication was a proximate cause of her injuries, and she was more than 50 percent at fault. To this end, Cove attempted to introduce evidence that Gerlach's blood alcohol concentration (BAC) at the time of the accident was .238 and expert testimony on how a BAC of that level would affect a person's judgment, psychomotor functions, and cognitive abilities. The trial court excluded this evidence and testimony because it found they were more prejudicial than probative. Instead, the trial court instructed the jury that Gerlach "was under the influence of intoxicating liquor at the time of the accident."

The jury found that Cove was negligent and that its negligence proximately caused Gerlach's injuries. It also found that Gerlach was contributorily negligent and seven percent at fault. The jury verdict was $3,799,793.78, and the net award to Gerlach was $3,533,808.23.

Cove appeals.

## ANALYSIS

### *Exclusion of Gerlach's Blood Alcohol Level*

Cove argues that the trial court abused its discretion by excluding evidence of Gerlach's blood alcohol level and that the exclusion was prejudicial. We agree.

We reverse a trial court's evidentiary rulings only upon a showing of abuse of discretion. Subia v. Riveland, 104 Wn. App. 105, 113-14, 15 P.3d 658 (2001). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). But an error does not require reversal unless it is prejudicial, and "[e]rror will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial." Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

"All relevant evidence is admissible unless its admissibility is otherwise limited." Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010); ER 402. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Salas, 168 Wn.2d at 669 (quoting ER 401). ER 403 allows a trial court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists." Salas, 168 Wn.2d at 671.

4

Where evidence is undeniably probative of a central issue in the case, the ability of the danger of unfair prejudice to substantially outweigh the probative value of the evidence is "'quite slim.'" Sisley v. Seattle Sch. Dist. No. 1, 171 Wn. App. 227, 232, 286 P.3d 974 (2012) (internal quotation marks omitted) (quoting Carson v. Fine, 123 Wn.2d 206, 224, 867 P.2d 610 (1994)).

Here, Cove asserted a voluntary intoxication defense against Gerlach. This defense, codified as RCW 5.40.060(1), provides a complete defense to Gerlach's action for personal injury if she was intoxicated, her intoxication was a proximate cause of her injury, and she was more than 50 percent at fault. RCW 5.40.060(1) states:

> [I]t is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

Before trial, Gerlach moved in limine to exclude evidence of a blood test taken by the hospital less than an hour after the accident. The test showed that her serum alcohol measurement was 252 mg/dL, which roughly translates to a BAC of .238. After several hearings, the trial court granted Gerlach's motion because Gerlach offered to stipulate to the jury that she was intoxicated at the time of the accident. The court determined that if Gerlach admitted she was intoxicated, evidence of her blood alcohol level was not necessary to establish a defense under RCW 5.40.060(1). The trial court explained that, under Peralta v. State, 187 Wn.2d 888, 389 P.3d 596 (2017), an admission of intoxication was sufficient to establish intoxication under RCW 5.40.060(1) and the admission of

Gerlach's blood alcohol level would have been more prejudicial than probative under ER 403. Because the trial court misapplied Peralta and ER 403, its exclusion of the blood alcohol evidence was an abuse of discretion.

ER 403 does not support the exclusion of the blood alcohol evidence. Although evidence of Gerlach's blood alcohol level was irrelevant to establish intoxication once she admitted that she was intoxicated, that evidence was still relevant to prove the extent to which her intoxication proximately caused her injuries. To that end, Cove was prepared to offer expert testimony that a person's physical and cognitive limitations at a BAC of .238 make it less likely that she could safely stand on a balcony or climb over a railing. Although Gerlach's high blood alcohol level could stimulate an emotional response in a jury, it is not so prejudicial that its probative value is outweighed. Because Gerlach's percentage of fault was reserved for the jury, the jury should have been able to consider Gerlach's level of intoxication and how it may have affected her physical and cognitive abilities. Geschwind v. Flanagan, 121 Wn.2d 833, 837-38, 854 P.2d 1061 (1993) (the determination of the percentage of total fault attributable to each party is specifically reserved for the trier of fact).

Furthermore, the trial court's error in excluding the blood alcohol evidence affected the outcome of the trial. Because of the error, Cove did not have the opportunity to present evidence on a key factual issue: whether Gerlach was predominantly liable for her injuries due to her level of intoxication. See Geschwind, 121 Wn.2d at 839 ("[W]hen a person has voluntarily engaged in behavior which increases the risk of injury, he or she may be held to be

predominantly liable for the injuries occurring as a result thereof."). Therefore, the error was not harmless.

Additionally, the trial court's reliance on Peralta was misplaced. In Peralta, a Washington State Patrol car hit Deborah Peralta after she walked directly into the street and in front of the car. Peralta, 187 Wn.2d at 892. Peralta sued the State for damages, and the State raised the voluntary intoxication defense in its answer. Peralta, 187 Wn.2d at 892. During discovery, the State sent Peralta a request to admit or deny that at the time of the collision, she "'was under the influence of intoxicating liquors.'" Peralta, 187 Wn.2d at 893. Peralta admitted without qualification that she was. Peralta, 187 Wn.2d at 893. Based on this admission, the trial court concluded as a matter of law that the first element of RCW 5.40.060(1) was met and it excluded Peralta's evidence that she did not appear intoxicated before the accident. Peralta, 187 Wn.2d at 893-94. The Supreme Court held that Peralta's admission was clearly an admission of intoxication under RCW 5.40.060(1). Peralta, 187 Wn.2d at 899. It also held that if she did not intend to admit "intoxication" as that term is statutorily defined (i.e., having a BAC greater than .08 or being unable to drive a motor vehicle), Peralta was required to clarify her admission to reflect that distinction. Peralta, 187 Wn.2d at 904-05. Because it was not relevant to the issues on appeal, the court did not address whether Peralta's level of intoxication contributed to the jury's finding that her intoxication was a proximate cause of her injuries or its finding that she was more than 50 percent at fault. But the Supreme Court did note that there was ample evidence to support the State's voluntary intoxication

defense, meaning there was evidence, other than Peralta's admission, of her intoxication presented at trial. Peralta, 187 Wn.2d at 900 n.6. Here, by contrast, the exclusion of Gerlach's blood alcohol evidence resulted in a complete absence of evidence as to the extent of her intoxication. For this reason, Peralta does not support the trial court's decision to exclude Gerlach's blood alcohol level.

Gerlach argues that even if the trial court erred in excluding the blood alcohol evidence, the error did not prejudice Cove because Cove "extensively examined Gerlach's companions concerning the extent and degree of their alcohol consumption before returning to the Cove." The record does not support this contention. None of Gerlach's companions testified as to how many drinks Gerlach consumed that night or that she was extremely intoxicated. For example, Brodie testified that Gerlach was drinking that night but that he could not remember what she had to drink. Colin testified that they all "had a drink" at the birthday party and shared a pitcher of beer at the bar and that based on his own observations, he had no reason to believe Gerlach was impaired that night. Finally, Miller testified that he couldn't remember Gerlach drinking but "would guess that she was." The lack of evidence of Gerlach's degree of intoxication prejudiced Cove's ability to prove its affirmative defense.

Alternatively, Gerlach argues that evidence of her blood alcohol level was properly excluded because there was no evidence that the required standards were met. This argument is not persuasive.

RCW 5.40.060(1) provides that for purposes of the voluntary intoxication defense,

> [t]he standard for determining whether a person was under the influence of intoxicating liquor or drugs shall be the same standard established for criminal convictions under RCW 46.61.502, and evidence that a person was under the influence of intoxicating liquor or drugs under the standard established by RCW 46.61.502 shall be conclusive proof that such person was under the influence of intoxicating liquor or drugs.

RCW 46.61.502 states:

> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:
>    (a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
>
>    . . . .
>
>    (c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug; or
>    (d) While the person is under the combined influence of or affected by intoxicating liquor, marijuana, and any drug.

Notably, only subsection (1)(a) of RCW 46.61.502, which sets forth the standard for "per se" intoxication, refers to specific testing standards that must be met for a person's measured level of intoxication to be used against him or her at trial. These testing standards, which are set forth in RCW 46.61.506, need not be met to show that someone is intoxicated under a non-per-se method such as that described in subsection (1)(c) of RCW 46.61.502. State v. Donahue, 105 Wn. App. 67, 76-77, 18 P.3d 608 (2001) (holding that evidence of intoxication from an Oregon hospital blood alcohol test that did not comply with RCW 46.61.506 standards was admissible to prove a non-per-se offense under RCW 46.61.502).

9

At trial, Cove specifically argued that Gerlach's blood alcohol evidence could be proved using the non-per-se method under RCW 46.61.502(1)(c). Because the blood alcohol evidence in this case could be evidence of intoxication under that non-per-se method, the test used need not comply with the requirements of RCW 46.61.506 to be admissible. This was not a proper basis for excluding the evidence.

Because the trial court abused its discretion in excluding the evidence of Gerlach's blood alcohol level at the time of the accident and the exclusion prejudiced Cove's ability to prove its affirmative defense of voluntary intoxication, reversal is required. We address the following issues, also raised on appeal, because they are likely to arise again on remand.

### Expert Testimony

Cove argues that the trial court abused its discretion by limiting the testimony of Cove's experts, Dr. Frank Vincenzi, Dr. Michael Carhart, and Dr. Thomas Wickizer. We agree that the trial court erred in limiting Dr. Vincenzi's testimony but disagree as to the testimony of Dr. Carhart and Dr. Wickizer.

"Generally, expert testimony is admissible if (1) the expert is qualified, (2) the expert relies on generally accepted theories in the scientific community, and (3) the testimony would be helpful to the trier of fact." Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). "When applying this test, trial courts are afforded wide discretion, and trial court expert opinion decisions will not be disturbed on appeal absent an abuse of such discretion." Johnston-Forbes, 181 Wn.2d at 355.

If a witness does not have the specialized training or experience necessary to draw the inference offered, the opinion lacks a proper foundation and is inadmissible under ER 702. Simmons v. City of Othello, 199 Wn. App. 384, 392-93, 399 P.3d 546 (2017). Accordingly, even if an expert witness is qualified, testimony from that witness is not admissible if the issue lies outside the witness's area of expertise. Simmons, 199 Wn. App. at 392. "'Where there is no basis for the expert opinion other than theoretical speculation, the expert testimony should be excluded.'" Simmons, 199 Wn. App. at 393 (quoting Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 103, 891 P.2d 718 (1995)).

### *Dr. Vincenzi*

On appeal, the parties do not dispute that Dr. Vincenzi was a qualified expert as to the effects of alcohol upon the human body. Dr. Vincenzi completed an analysis that included a conversion of Gerlach's serum alcohol measurement of 252 mg/dL at the hospital to the more commonly used BAC number of .238 at the time of the accident. He also testified in an offer of proof as to the effect of the consumption of alcohol on a person based on his or her blood alcohol level. He opined that a person with a BAC of .200 or higher would experience severe psychomotor impairment.

The trial court excluded Dr. Vincenzi's testimony at the same time that it erroneously excluded the evidence of Gerlach's blood alcohol level. Dr. Vincenzi's testimony would have been helpful to the jury in understanding the effects of intoxication on a person with a high blood alcohol level. To the extent

11

that the trial court excluded Dr. Vincenzi's testimony based on its erroneous ruling on Gerlach's blood alcohol level, that exclusion was in error.

Gerlach argues that Dr. Vincenzi's testimony was speculative and without foundation because it was based on the hospital blood test that did not comply with the testing standards of RCW 46.61.506. As explained in the previous section, those testing standards do not bar admission. Therefore, this argument is not persuasive.

Gerlach also argues that Dr. Vincenzi's testimony was properly excluded based on Purchase v. Meyer, 108 Wn.2d 220, 737 P.2d 661 (1987), because evidence of how alcohol affected a person's behavior cannot be based on a blood alcohol test alone. But Purchase was a dramshop liability case and is distinguishable. To find an establishment liable for over-serving alcohol under a dramshop theory, a plaintiff must prove that a server furnished intoxicating beverages to an obviously intoxicated person. Purchase, 108 Wn.2d at 225. In Purchase, the relevant issue was whether or not it was obvious to a server that the person being served was intoxicated. Purchase, 108 Wn.2d at 227. The court held that evidence of a person's blood alcohol level alone could not support a finding that a person was "obviously intoxicated" because people can exhibit the effects of intoxication differently. Purchase, 108 Wn.2d at 225-27.

This is not a dramshop liability case, and here, there is no requirement that Cove prove Gerlach's intoxication was obvious to others. Rather, the issue in this case is the extent to which Gerlach's extreme intoxication contributed to her injuries. Therefore, Purchase does not control.

Finally, Gerlach argues that Dr. Vincenzi's testimony was properly excluded because testimony explaining that alcohol impairs a person's judgment is a matter of common knowledge understood by the average juror and, therefore, not helpful. But, Dr. Vincenzi's testimony was not limited to this basic fact. He explained that a person with a blood alcohol level of .200 or above will have a decrease in inhibitions, psychomotor impairment, and cognitive impairment. He also opined that "[p]sychomotor impairment really starts at levels of .05 (unintelligible), about .05 to .06 or thereabouts and gets worse and worse, more and more impairment, and severe impairment in essentially everyone at levels of [.]200 or above." Dr. Vincenzi's opinion on how a person's physical and cognitive abilities are affected by his or her BAC would have been helpful to the jury and should have been admitted.

### Dr. Carhart

The trial court did not err in limiting Dr. Carhart's testimony. Dr. Carhart is an expert "in the biomechanics of human injury and accident reconstruction, specializing in the areas of musculoskeletal dynamics, occupant dynamics, human injury tolerance, vehicular rollover, and occupant-to-glazing interaction." Dr. Carhart was prepared to testify that Gerlach's intoxication would have caused her to have "diminished stability, psychomotor functioning, reaction time performance, and ability to manage complex motor tasks, such as trying to maneuver over a railing." He based this opinion on two studies that he cited as authoritative sources. But Dr. Carhart is not an expert in how alcohol affects the

13

human body, and his testimony on this issue would have been speculative.

Therefore, the trial court properly excluded Dr. Carhart's testimony on this issue.

*Dr. Wickizer*

The trial court also did not abuse its discretion by excluding Dr. Wickizer's expert testimony on the reasonable value of Gerlach's medical expenses.

A plaintiff "may recover only the reasonable value of medical services received, not the total of all bills paid." Patterson v. Horton, 84 Wn. App. 531, 543, 929 P.2d 1125 (1997). "Thus, the plaintiff must prove that medical costs were reasonable and, in doing so, cannot rely solely on medical records and bills." Patterson, 84 Wn. App. at 543. "In other words, medical records and bills are relevant to prove past medical expenses only if supported by additional evidence that the treatment and the bills were both necessary and reasonable." Patterson, 84 Wn. App. at 543.

Here, Cove intended to call Dr. Wickizer, a health economist, as an expert witness to testify about the medical billing process and provide a comparative analysis of the cost of medical services. Specifically, Dr. Wickizer authored an analysis on the reasonableness of Gerlach's medical expenses, in which he explained that billing for the same procedures can vary greatly from hospital to hospital and the billed amount is not necessarily reasonable. In the analysis, he recalculated the "reasonable value" of all of Gerlach's medical expenses by applying a cost-to-charge ratio from the hospital's Federal Cost Report to each hospital inpatient charge. The Federal Cost Reports are compiled by the federal government and include cost and revenue information for all patients receiving

care at that hospital. Additionally, Dr. Wickizer estimated the reasonable value of Gerlach's physician charges by applying the physician's agreed Medicare reimbursement rate to each physician charge. Cove intended this testimony to assist the jury in evaluating the reasonableness of Gerlach's medical bills.

The trial court properly excluded Dr. Wickizer's testimony. Evidence of what Gerlach's physicians accept from Medicaid and how the inpatient charges are affected by Dr. Wickizer's cost-to-charge ratio is not proof that Gerlach's medical expenses were unreasonable. In Hayes v. Wieber Enterprises, Inc., 105 Wn. App. 611, 616, 20 P.3d 496 (2001), the Court of Appeals held that the trial court did not abuse its discretion in refusing to admit evidence of the amount a plaintiff's doctor actually accepted as payment from the insurance company to refute the reasonableness of the billed medical expenses. It reasoned that "[t]he fact that the doctor accepted the first party insurance carrier's limit for his services does not tend to prove his charge for these services was unreasonable." Hayes, 105 Wn. App. at 616.

The same is true here. Evidence that, on average, a procedure costs less than the amount charged or that Gerlach's physicians accept a lesser payment for services from Medicare is not helpful to the jury in determining whether her medical expenses were reasonable. Furthermore, Gerlach met her burden to prove the reasonableness of her medical expenses under Patterson because she presented expert testimony other than the medical records and bills themselves. Dr. Lowell Finkleman testified that the medical treatment Gerlach received and the resulting charges were reasonable and customary for this community and

15

consistent with charges he had seen over the years. Therefore, the trial court did not abuse its discretion by refusing to allow Dr. Wickizer to testify.

Cove argues that Hayes is distinguishable because Dr. Wickizer was not testifying on what was charged versus what was paid. We disagree. Although it is not clear from Dr. Wickizer's analysis whether the revenue figure used in the cost-to-charge ratios reflects the amounts billed or the amounts ultimately received for inpatient services, Dr. Wickizer's analysis of Gerlach's physician charges was based on the physicians' agreed Medicare reimbursement rate. Therefore, the court did not abuse its discretion in refusing to allow Dr. Wickizer to testify as to his analysis.

### Instruction on Voluntary Intoxication

Cove argues that the trial court erred by failing to give Cove's proposed jury instruction on its voluntary intoxication defense, which closely followed the pattern instruction. We disagree.

Jury instructions are sufficient when they allow a party to argue their theory of the case, are not misleading and, when read as a whole, properly inform the jury of the applicable law. Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). As long as these conditions are met, the trial court may refuse to give augmenting instructions or instructions that are cumulative, collateral, or repetitive. Bodin, 130 Wn.2d at 732; Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 165-66, 876 P.2d 435 (1994). "'The pattern [jury] instructions are not authoritative primary sources of the law' and are not binding on trial courts." Univ. of Wash. v. Gov't Emps. Ins. Co., 200 Wn. App. 455, 475, 404

P.3d 559 (2017) (alteration in original) (quoting 6 WASHINGTON PRACTICE:

WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 0.10, at 3 (6th ed. 2012)).

Whether a jury instruction reflects an accurate statement of law is

reviewed de novo. Joyce v. Dep't of Corrs., 155 Wn.2d 306, 323, 119 P.3d 825

(2005). But "'[t]he number and specific language of the instructions are matters

left to the trial court's discretion.'" Leeper v. Dep't of Labor & Indus., 123 Wn.2d

803, 809, 872 P.2d 507 (1994) (quoting Douglas v. Freeman, 117 Wn.2d 242,

256, 814 P.2d 1160 (1991)).

The pattern instruction for the voluntary intoxication defense under RCW

5.40.060(1) states:

> It is a defense to an action for damages for [personal
> injuries] [wrongful death] that the [person injured] [person killed]
> was then under the influence of [alcohol] [or] [any drug], that this
> condition was a proximate cause of the [injury] [death], and that the
> [person injured] [person killed] was more than fifty percent at fault.

6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 16.03,

at 213 (6th ed. 2012) (WPI). This instruction is an accurate statement of the law.

Here, the trial court instructed the jury that

> [a] person who becomes voluntarily intoxicated is held to the
> same standard of care as one who is not so affected. The
> intoxication of the plaintiff at the time of the occurrence may be
> considered by the jury, together with all the other facts and
> circumstances, in determining whether that person was negligent.

The court also instructed on contributory negligence:

> If you find contributory negligence, you must determine the
> degree of negligence, expressed as a percentage, attributable to
> the person claiming injury or damage. The court will furnish you a
> special verdict form for this purpose. Your answers to the
> questions in the special verdict form will furnish the basis by which
> the court will apportion damages, if any.

17

Cove did not object to either of these instructions. But Cove did object to the trial court's failure to give its proposed instruction on the voluntary intoxication defense, which closely followed WPI 16.03.

Although the instructions given by the trial court were not an inaccurate statement of the law, they were not particularly clear. To establish its voluntary intoxication defense, Cove was required to prove that (1) Gerlach was under the influence of intoxicating liquor, (2) her condition was a proximate cause of her injury, and (3) she was more than 50 percent at fault. RCW 5.40.060(1). Instructions 20 and 21, as given, allowed Cove to argue its voluntary intoxication defense. The jury was already instructed that Gerlach was "under the influence of intoxicating liquor at the time of the accident," satisfying the first requirement. Instruction 20 instructed the jury to consider whether Gerlach was negligent as a result of that intoxication, satisfying the second requirement of the defense. And, instruction 21 instructed the jury to determine the percentage of fault attributable to Gerlach, satisfying the third requirement. Given these instructions, Cove was able to argue that Gerlach's intoxication was a proximate cause of her accident and that she was more than 50 percent at fault. But, WPI 16.03 contains a more succinct statement of the elements of the voluntary intoxication defense, and while the trial court did not abuse its discretion by giving instructions 20 and 21, WPI 16.03 is a more appropriate instruction and should be used on remand.

### Cove's Duty to Gerlach under the RLTA

Cove argues that because Gerlach was not Cove's tenant, the trial court erred in instructing the jury that Cove owed a duty to Gerlach based on the RLTA. We agree.

In a negligence case, the plaintiff must prove duty, breach, causation, and damages. Nivens v. 7-11 Hoagy's Corner, 133 Wn.2d 192, 198, 943 P.2d 286 (1997). Whether an actionable duty was owed to a plaintiff is a threshold determination and a question of law that this court reviews de novo. Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 877, 288 P.3d 328 (2012).

Under the RLTA, landlords have an implied warranty of habitability to tenants. See RCW 59.18.060; Foisy v. Wyman, 83 Wn.2d 22, 28, 515 P.2d 160 (1973). This duty to keep the premises in habitable condition provides tenants with a negligence cause of action against landlords who fail to do so. See Lian v. Stalick, 106 Wn. App. 811, 818, 25 P.3d 467 (2001). But Restatement (Second) of Property § 17.6 (1977) states:

> A landlord is subject to liability for physical harm caused to the *tenant and others upon the leased property with the consent of the tenant* or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
> (1) an implied warranty of habitability; or
> (2) a duty created by statute or administrative regulation.

(Emphasis added.) Arguably, the language of section 17.6 permits a tenant's guest to recover from a landlord directly for breach of an implied warranty of habitability, a statute, or a regulation. But, we recently held that Washington has only adopted section 17.6 in cases where a landlord's negligence is alleged by a tenant and that the section has not been adopted in the context of claims by nontenants. Phillips v. Greco, __ Wn. App. 2d __, 433 P.3d 509, 511 (2019). Therefore, Gerlach cannot base any duty owed by Cove upon section 17.6.

Here, Gerlach sued Cove for negligence, claiming it breached its implied and statutory warranty of habitability to Gerlach by failing to repair the rotted railing. Cove moved for partial summary judgment, arguing that Gerlach's negligence claim could not proceed because Gerlach was not a tenant and the implied and statutory warranty of habitability only applies to tenants under the RLTA. The trial court denied Cove's motion for summary judgment and instructed the jury on a landlord's duties under the RLTA. Because no Washington law has extended section 17.6 to apply to nontenants, the trial court erred by denying Cove's motion for summary judgment on this cause of action and instructing the jury that Cove could be liable to Gerlach for a violation of the RLTA. We hold that this cause of action cannot go forward on remand.

We reverse the jury verdict in favor of Gerlach and remand for retrial of the issues of liability and allocation of fault in Gerlach's negligence action against Cove.

WE CONCUR: