IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DENISE WALLACE, as Personal Representative of the ESTATE of PATRICK JOSEPH WALLACE,<br><br>     Appellant,<br><br>   v.<br><br>RICHARD PECK and JENNIFER PECK, husband and spouse, individually, and the marital community composed thereof; GREATER SEATTLE CONCRETE, INC; LOWE ENTERPRISES REAL ESTATE GROUP, INC., a foreign profit corporation; DESTINATION HOTELS AND RESORTS LLC., a foreign limited liability company; TWO ROADS HOSPITALITY, LLC, a foreign limited liability company; EC RESTAURANTS (SEATTLE) CORP., a foreign profit corporation; 1415 5th AVENUE SEATTLE, LLC, a foreign limited liability company; SEATTLE 1415 HOTEL OWNER, LLC, a foreign limited liability company; KAYA SULLIVAN AND THOMAS L. SULLIVAN, wife and husband, individually, and the marital community composed thereof; LEON JAY JOHNSON and WENDY MARIA JOHNSON, a married couple, individually and the marital community composed thereof; JOHN DOE CHAUFFEUR BUSINESS; JOHN DOES 1-12,<br><br>     Defendants, | No. 81285-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

Citations and pin cites are based on the Westlaw online version of the cited material.

and

DH SEATTLE MANAGEMENT,
LLC, a Washington state limited
liability company,

           Respondent.

SMITH, J. — This case pertains to the tragic death of a young man during a traffic accident in which the other driver was intoxicated.  Following a night out drinking at Frolik Kitchen + Cocktails, Richard Peck hit and killed 18-year-old Patrick Wallace.[1]  Patrick's mother, Denise Wallace, sued, among other entities and individuals, DH Seattle Management LLC, which owns and operates Frolik.  She alleged that Frolik overserved alcohol to Richard prior to the accident.  On DH Seattle's motion, the trial court granted summary judgment in its favor, concluding that pursuant to RCW 66.44.200, there was no evidence that Richard was "apparently" intoxicated when he was served alcohol at Frolik.  Denise challenges this conclusion on appeal.

Because the photographic and other evidence presented did not provide direct observational evidence that Richard was readily and apparently intoxicated when Frolik served him alcohol, the trial court did not err.  Therefore, we affirm summary judgment in favor of DH Seattle.

FACTS

On the evening of May 20, 2016, Richard and Jennifer Peck attended a surprise birthday party for Leon Johnson.  A group of individuals attended the

---

[1] We refer to parties by their first name where it provides clarity.

party, including Richard's coworkers from Greater Seattle Concrete Inc., his supervisor, Thomas Sullivan, and Thomas's wife, Kaya Silkiss-Hero.[2] Silkiss-Hero organized the birthday party, which included a chauffeured limousine service to Seattle from Lake Stevens, Washington. Silkiss-Hero had a cooler with rum and coke in the limousine so that the occupants could make themselves drinks. The limousine picked up the group, including Richard and Jennifer, from Beers & Brauts, where Richard ate and parked his vehicle.

On the way to downtown Seattle, the limousine drove the passengers to Safeway, where Richard bought a bottle of "Fireball" whiskey and an energy drink. Another passenger bought a bottle of rum. An image shows Richard holding a bottle of Fireball in the limousine around 9:00 p.m., but Richard testified that he did not drink it. Jennifer later told an officer at the scene of the accident that Richard had "a few drinks of the Fireball whiskey in the limousine and also a Jack Daniels and Coke."[3]

The limousine next dropped the passengers off at Add-a-Ball arcade bar, where Richard had one 12-ounce beer. They left shortly after arriving, and around 10:00 p.m., the limousine dropped the group off at Frolik, a rooftop bar in Seattle. Witnesses later testified that, when they arrived at Frolik, it did not appear that Richard had consumed or purchased alcohol yet.

At some point, Richard stepped outside to smoke a cigar. Outside,

---

[2] At the time of the accident, Sullivan and Silkiss-Hero were married but had divorced by the time of the complaint and Silkiss-Hero had changed her last name.

[3] It is not clear if this statement referred to the limousine ride to Seattle or from Seattle.

Richard met two men with whom Richard discussed his service in the Marines. The men offered to buy Richard a drink when they returned to Frolik. Richard showed the bartender the stamp on his hand to verify that he was over 21 years of age before the men bought him a "Tokyo Tea." After he finished the drink at the bar, one of the men ordered a second tea for Richard, and the three individuals continued to speak at the bar. Richard later testified that he did not feel the effects of the drinks until after his second tea, but he did feel the effects while he was still at Frolik. Frolik had two receipts that included two Long Island iced teas sold at 10:36 p.m. and 10:53 p.m. A photograph of Richard at 10:43 p.m. shows his eyes not opened all of the way. Testimony from individuals at Frolik indicated that they did not see Richard drinking, that he did not appear intoxicated, or that they did not see him at all.[4]

The group left Frolik between 11:15 p.m. and 11:30 p.m.[5] A photograph taken during the drive shows Richard with bloodshot eyes. Silkiss-Hero, however, testified, "I think that [Richard] had consumed alcohol through the night and that he was sober—appearing sober enough to operate a motor vehicle" when he left Beers & Brauts. Richard and Jennifer left Beers & Brauts, and Richard began the drive back to their home.

At around 12:15 a.m. on May 21, 2016, Richard drove his vehicle into a small car driven by Patrick. Richard failed to stop at a red light, driving through

---

[4] Witnesses testified, "I don't recall [Peck] showing any visible signs of intoxication," and "He seemed fine."

[5] The last photograph taken at Frolik was taken at 11:11 p.m. and testimony indicated that the group left shortly thereafter.

the light at a high speed and colliding with the driver's side of Patrick's vehicle. Patrick died instantly. Richard got out of his vehicle following the accident and "was very agitated."

Washington State Patrol Trooper John Axtman arrived at the accident scene and administered field sobriety tests (FSTs), which Richard failed "overwhelmingly," unable to stand and smelling strongly of intoxicants.[6] Richard made varying statements to the arresting officers, including that he had one and a half beers beginning at 5:30 p.m., that he had "a couple of beers with dinner," and that he had no more than three beers total that night. The reporting officers found "a fifth bottle of Fireball . . . behind the front passenger seat of the vehicle." And at around 1:04 a.m., Trooper Axtman obtained a portable breath test, showing Richard's blood alcohol concentration level (BAC) was .177 g/100ml— well above the legal limit for driving a motor vehicle.

Trooper Axtman arrested Richard and transported him to Providence Regional Medical Center in order to obtain a blood draw. While waiting for the nurse, Richard could not stay awake and was falling over. The blood draw taken at 2:33 a.m. showed that Richard's BAC at that time was .18 g/100ml. His blood also showed that he had consumed or smoked marijuana. Richard later pleaded guilty to a charge of vehicular homicide and received a 78-month sentence.

Denise sued DH Seattle under RCW 66.44.200, which prohibits the sale of liquor to any person apparently intoxicated. And DH Seattle admitted that "at all relevant times it was responsible for operations and management of" Frolik.

_____

[6] Richard showed almost all signs of intoxication according to the FSTs.

5

DH Seattle moved for summary judgment. In response, Denise provided an expert declaration by Joseph C. Anderson, Ph.D., which concluded that, in order to have the BAC that Richard had at the time of the accident, Richard would have had to consume around eight standard drinks before having consumed the two Tokyo Teas between 10:30 and 11:00 p.m. Dr. Anderson asserted that "[b]ased on the materials I've reviewed in this case and my expertise, my opinion, on a more probable than not basis and to reasonable degree of certainty, is that Mr. Richard Peck would have appeared to be intoxicated when he was served his last drink at approximately 10:53 PM." Another expert, Patricia Ferguson, asserted that "[i]t was irresponsible for staff at Frolik to serve Mr. Peck *any* alcohol so soon after serving him the first Tokyo Tea without doing a full assessment of demeanor."[7] Ferguson also asserted that "judging from the amount of alcohol that . . . is reported . . . that he consumed, I would say that there was a good possibility that he was showing signs of intoxication." Ferguson, however, admitted that there was no evidence of direct observation of Richard's intoxication at the time he was served either teas at Frolik.

The trial court granted the motion finding that, "[w]hile there are issues of fact concerning how much Mr. Peck had to drink prior to Frolik," the photographic evidence presented by Denise was "woefully insufficient to show apparent intoxication," and "the pictures in this case [were] insufficient as a matter of law to show Mr. Peck to be apparently intoxicated at Frolik."

---

[7] (Emphasis in original.)

Denise appeals.

ANALYSIS

Denise asserts that the trial court erred when it granted DH Seattle's motion for summary judgment and when it found that she "fail[ed] to provide any evidence of apparent intoxication at the time of service." Because Denise failed to provide evidence sufficient to demonstrate an issue of material fact, we disagree.

We review summary judgment orders de novo, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving part. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Under CR 56(c), "summary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (alteration in original).

RCW 66.44.200(1), the overservice statute, provides that "[n]o person shall sell any liquor to any person apparently under the influence of liquor." "Businesses that violate the statute by serving drunk drivers will be civilly liable to third-party victims for damages caused by their patron." Faust v. Albertson, 167 Wn.2d 531, 538, 222 P.3d 1208 (2009). To survive summary judgment in an overservice case, "evidence on the record must demonstrate that the tortfeasor was 'apparently under the influence' by direct, observational evidence at the time of the alleged overservice or by reasonable inference deduced from observation shortly thereafter." Faust, 167 Wn.2d at 539. "'Apparently' means 'readily

7

*perceptible* to the senses and *capable of being* readily perceived by the sensibilities or understanding as certainly existent or present.'" Ensley v. Mollmann, 155 Wn. App. 744, 756, 230 P.3d 599 (2010) (internal quotation marks omitted) (quoting Barrett v. Lucky Seven Saloon, Inc., 152 Wn.2d 259, 268, 96 P.3d 386 (2004)).

Purchase v. Meyer, 108 Wn.2d 220, 737 P.2d 661 (1987), is instructive. There, El Torito restaurant had served Mary Margaret Meyer, a minor, three margaritas. Purchase, 108 Wn.2d at 222. Sometime after leaving El Torito, Meyer crashed her vehicle into David Purchase's motorcycle, injuring Purchase. Purchase, 108 Wn.2d at 222. At that time, Meyer had a BAC of 0.13 g/100ml. Purchase, 108 Wn.2d at 222. Purchase sued El Torito under the overservice statute, and the trial court denied El Torito's motion for summary judgment. Purchase, 108 Wn.2d at 222. However, Purchase provided no testimony indicating that anyone believed Meyer was intoxicated at the time that El Torito served her. Purchase, 108 Wn.2d at 222.

On appeal, the court reversed the trial court's decision to deny El Torito's motion, noting: "It does not [necessarily] follow . . . that a person who is apprehended driving with a bac of .10 [g/100ml] . . . was also 'obviously intoxicated' for purposes of the Washington State Liquor Act[, Title 66 RCW,] when, at some earlier time, an intoxicating beverage was sold to that person." Purchase, 108 Wn.2d at 226. It concluded that "the results of the alcohol breath test taken hours after the minor was served alcoholic beverages at the El Torito restaurant was not competent evidence against El Torito." Purchase, 108 Wn.2d

8

at 226-27.

Similarly, here, Denise failed to present evidence showing that Richard's intoxication was readily perceptible when Frolik served him alcohol. Richard received two drinks while at the bar within a short period of time. The bartender saw Richard when Richard showed them his hand stamp to verify his age. And it is clear that, at some point, Richard became highly intoxicated, but there is no evidence that it was before Frolik served Richard either the first or the second Tokyo Tea. To this end, witnesses present at Frolik indicated that Richard did not appear intoxicated during his time there.

In addition, the photographs taken at Frolik do not show that Richard's intoxication was readily apparent to the senses. One photograph shows Richard with no apparent signs of intoxication, and a second photograph shows Richard with his eyes shut or partially opened. Although Ferguson alleged that the latter photograph was proof that Richard appeared intoxicated, the photograph is insufficient to create an issue of material fact as to whether Richard was apparently intoxicated when Frolik served him. Specifically, this type of evidence typically is used to corroborate evidence that someone was apparently intoxicated, and relying solely on the photograph of Richard at Frolik as proof of his apparent intoxication would require a jury to speculate that Richard's eyes were closed because he was intoxicated. But Denise had to provide direct observational evidence at or near the time of service that supports a finding that a server could readily perceive Richard's intoxication; the photographs do not. And those who observed Richard firsthand at Frolik testified that he did not

appear intoxicated. Cf. Faust, 167 Wn.2d at 541 (Case law "allow[s] juries to draw inferences from firsthand observations of a person's intoxication and to make any related credibility determinations."). Therefore, even taking the evidence in the light most favorable to Denise, she presented insufficient evidence to withstand DH Seattle's motion for summary judgment. See Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (Once the moving party shows there are no genuine issues of material fact, "[t]he nonmoving party may not rely on speculation . . . 'for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.'") (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

Denise disagrees and relies heavily on Richard's high BAC, which the officers took following the accident, and her experts' conclusions that Richard likely was apparently intoxicated. Under Purchase, the results of the breath test and the blood draw, and Denise's experts' opinions do not show direct observational evidence that Richard was intoxicated when he was last served at Frolik. See Purchase, 108 Wn.2d at 226-27 (concluding that the same type of evidence was insufficient as a matter of law to show that the individual was apparently intoxicated); see also Ensley, 155 Wn. App. at 756 ("[A] person's appearance a substantial time after the service is insufficient evidence of apparent intoxication to defeat summary judgment."). Although the time differed between El Torito serving Meyer and her accident, and Frolik serving Richard

10

and his accident, like in Purchase, Denise fails to provide direct observational evidence showing that Richard was apparently intoxicated when he was at Frolik an hour before the accident.[8] Cf. Dickinson v. Edwards, 105 Wn.2d 457, 460, 716 P.2d 814 (1986) (holding that officer's testimony regarding what they directly observed ten minutes after the intoxicated individual left the bar where they were served alcohol was sufficient to withstand summary judgment).

Denise also points to Richard's alleged statements to the arresting officers where he indicated that he drank at a restaurant in Snohomish to one officer and that he had one to one and a half beers since 5:30 p.m. She uses these statements to support her factual assertion that "Richard acknowledged that he started with three 18-to-20 ounce beers." But the record does not provide evidence of that fact. Rather, Richard allegedly told one of the arresting officers that he had three beers prior to the accident, not specifically prior to Frolik. Furthermore, "[e]vidence of the amount of alcohol consumed is insufficient to establish that the person was apparently under the influence at the time of service." Ensley, 155 Wn. App. at 756.

Denise cites Fairbanks v. J.B. McLoughlin Co., 131 Wn.2d 96, 929 P.2d 433 (1997), for the proposition that evidence of intoxication shortly after service can be sufficient to show that an individual was apparently intoxicated when they were overserved. In Fairbanks, the driver of an automobile, Ann Neely, attended a company Christmas party before hitting Carolee Fairbanks' vehicle and causing

---

[8] In Purchase, Meyer was served around three and a half to four hours prior to the breath test. 108 Wn.2d at 222. But Richard was served around two hours before his breath test.

11

her injuries. 131 Wn.2d at 98-99. Fairbanks sued the company, J.B. McLoughlin Co., for vicarious liability. Fairbanks, 131 Wn.2d at 100. McLoughlin moved for summary judgment and submitted Neely's declaration stating that she went to a bar following the Christmas party and before the accident. Fairbanks, 131 Wn.2d at 100. However, Neely originally had testified that she left the party immediately prior to the accident, and Fairbanks produced additional evidence that Neely did not go to the bar. Fairbanks, 131 Wn.2d at 98-100. The court concluded that there was an issue of material fact as to whether Neely was intoxicated after she left the banquet because of the contradicting evidence regarding whether she went to a bar after the party. Fairbanks, 131 Wn.2d at 102-03. The court held that

> [a] police officer's subjective observation that the employee was obviously intoxicated shortly after leaving the banquet may raise an inference that she was obviously intoxicated when the employer served her, provided that the employee did not consume any alcohol after leaving the banquet and provided that no time remains unaccounted for between the banquet and the subsequent observation.

Fairbanks, 131 Wn.2d at 103.

Fairbanks is distinguishable because, here, we are unaware of whether Richard consumed any alcohol after leaving Frolik, and testimony of those who observed him at Frolik, at least an hour prior to the officers' observations and the breath test, indicated he did not appear intoxicated. Thus, even under Fairbanks, the observational evidence of Richard after the accident does not create an issue of material fact as to whether Richard was apparently intoxicated at Frolik. Thus, we are not persuaded.

For these reasons, Denise failed to present evidence sufficient to create an issue of material fact as to whether Richard was apparently intoxicated when Frolik served him alcohol.  Therefore, we affirm.

_____ Smith, J.

WE CONCUR:

_____ Mann, C.J.          _____ Appelwick, J.